## MEMPHIS BANK & TRUST CO. v. GARNER, SHELBY COUNTY TRUSTEE, ET AL.

No. 81–1613.   Argued November 29, 1982—Decided January 24, 1983

MARSHALL, J., delivered the opinion for a unanimous Court.

*K. Martin Worthy* argued the cause for appellant.   With him on the briefs were *Stephen L. Humphrey* and *David C. Scruggs.*

*Jimmy C. Creecy,* Deputy Attorney General of Tennessee, argued the cause for appellee *William M. Leech, Jr.,* Attorney General. With Mr. Creecy on the brief were Mr. Leech, *pro se,* and *Joe C. Peel,* Assistant Attorney

General. *J. Minor Tait, Jr.*, argued the cause for appellees Garner et al. With him on the brief was *Clifford D. Pierce, Jr.**

JUSTICE MARSHALL delivered the opinion of the Court.

The Tennessee bank tax imposes a tax on the net earnings of banks doing business within the State, and defines net earnings to include income from obligations of the United States and its instrumentalities but to exclude interest earned on the obligations of Tennessee and its political subdivisions. Tenn. Code Ann. § 67–751 (Supp. 1982). This appeal presents the question whether the Tennessee bank tax violates the immunity of obligations of the United States from state and local taxation.

I

Appellant Memphis Bank & Trust Co. (Memphis Bank) brought this action in state court to recover $56,696.81 in taxes covering the years 1977 and 1978 which had been assessed pursuant to the Tennessee bank tax, Tenn. Code Ann. § 67–751 (Supp. 1982).[1] Each bank doing business in Ten-

---

*Briefs of *amici curiae* urging reversal were filed by *Solicitor General Lee, Acting Assistant Attorney General Hamblen, Stuart A. Smith*, and *Ernest J. Brown* for the United States; by *Henry W. Howard* and *Elizabeth S. Salveson* for the Capital Preservation Fund, Inc., et al.; and by *Mac Asbill, Jr.*, and *Warren N. Davis* for the Farm Credit Banks.

[1] "Excise tax on bank earnings—Rate.—There is hereby created a subclassification of intangible personal property which shall be designated as the 'shares of banks and banking associations.' All property in this subclassification shall be taxed in the following manner: Commencing in 1977 and each year thereafter, in lieu of the assessment according to the value and taxation of its intangible personal property, each bank doing business in this state shall pay to local governments of Tennessee an excise tax of three percent (3%) of the net earnings for the next preceding fiscal year less ten percent (10%) of the ad valorem taxes paid by the bank on its real property and tangible personal property for the next preceding year. The net earnings shall be calculated in the same manner as prescribed by chapter 27 of title 67. The tax herein imposed shall be in lieu of all taxes on the redeemable or cash value of all of their outstanding shares of capital

nessee is required under § 67–751 to pay to local governments of the State a tax of 3% of the bank's net earnings for the preceding fiscal year, less a portion of the ad valorem taxes paid by the bank for that year.[2] Under the statute, net earnings include interest received by the bank on the obligations of the United States and its instrumentalities, as well as interest on bonds and other obligations of States other than Tennessee, but exclude interest on obligations of Tennessee and its political subdivisions.[3]

Appellant alleged that the bank tax, as applied to it, violated 31 U. S. C. § 742, and thus was unconstitutional under the Supremacy Clause. The parties stipulated that the amount of tax paid by appellant for the years 1977 and 1978 was based entirely on interest earned on various federal

---

stock, customer savings and checking accounts, certificates of deposit and certificates of investment, by whatever name called, including other intangible corporate property of such bank or banking association provided that such bank or banking association shall nonetheless continue to be subject to ad valorem taxes on its real and tangible personal property, the excise tax imposed under chapter 27 of title 67 and all other taxes to which it is currently subject."

[2] A "minimum tax" provides that under § 67–751 the bank shall be taxed no less than an ad valorem tax calculated on 60% of the bank's book value. Tenn. Code Ann. § 67–752 (Supp. 1982). The parties apparently did not consider the "minimum tax" described in § 67–752 to be an alternative basis of tax liability in the event that § 67–751 was held unconstitutional. Accordingly, the courts below had no occasion to consider the constitutionality of § 67–752 and we do not reach this question.

[3] For purposes of the bank tax, the term "net earnings" is defined as "[f]ederal taxable income" with specified adjustments. Tenn. Code Ann. § 67–2704 (Supp. 1982). "Federal taxable income" includes interest on obligations of the United States and its instrumentalities, but does not include interest on state or municipal obligations. See 26 U. S. C. § 103(a). Tennessee Code Ann. § 67–2704(b)(1)(B) adjusts "federal taxable income" by adding "[i]nterest income earned on bonds and other obligations of other states or their political subdivisions, less allowable amortization." However, no similar adjustment is made to include interest on obligations of the State of Tennessee or its political subdivisions in the definition of "net earnings" subject to the bank tax.

obligations, primarily notes and bills of the United States Treasury and obligations of Federal Credit Banks.[4]   They also stipulated that if the interest earned on such federal obligations were excluded from the computation, Memphis Bank would owe no taxes for the years in question.

The Chancery Court of Shelby County granted Memphis Bank's motion for summary judgment, holding that 31 U. S. C. § 742 prohibits the inclusion of interest on obligations of the United States and its instrumentalities in the computation of taxable "net earnings" under the Tennessee bank tax.   The Supreme Court of Tennessee reversed.   624 S. W. 2d 551 (1981).   It held that the bank tax fell within the exception for "nondiscriminatory franchise . . . taxes" set forth in 31 U. S. C. § 742.   We noted probable jurisdiction, 456 U. S. 943 (1982), and we reverse.

## II

Title 31 U. S. C. § 742 establishes a broad exemption of federal obligations from state and local taxation:

> "Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority.   This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other non-

---

[4] There are 37 Farm Credit Banks: 12 Federal Land Banks, 12 Federal Intermediate Credit Banks, and 13 Banks for Cooperatives.   They are federal instrumentalities designed to provide a reliable source of credit for agriculture.   Pub. L. 92–181, 85 Stat. 583, 12 U. S. C. § 2001 *et seq.*   See generally *United States* v. *Mississippi Chemical Corp.*, 405 U. S. 298, 301–305 (1972).

The tax on Memphis Bank was also based in part on income from obligations of the Farmers Home Administration and the Federal National Mortgage Association.

property taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes."

The exemption established in § 742 applies not only to Treasury notes and bills, but also to the obligations of such instrumentalities of the United States as Federal Farm Credit Banks. Cf. *Smith* v. *Davis*, 323 U. S. 111, 117 (1944) ("other obligations" must be interpreted "in accord with the long established Congressional intent to prevent taxes which diminish in the slightest degree the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit"). Because no federal statutes have "otherwise provided," § 742 applies to income from the types of federal obligations held by Memphis Bank.[5] Therefore, the bank tax is impermissible unless the tax is a "nondiscriminatory franchise or other nonproperty ta[x] in lieu thereof" under § 742.[6]

We have not previously had occasion to determine whether a state or local tax is "nondiscriminatory" within the meaning of § 742. However, we have frequently considered this concept in our decisions concerning the constitutional immunity

---

[5] In establishing the Federal Farm Credit Banks, Congress made clear that the obligations of these banks would be immune from taxation by the States. 12 U. S. C. §§ 2055, 2079, and 2134. We have no occasion to determine whether the immunity described in these provisions is broader than that otherwise provided by 31 U. S. C. § 742. We note, however, that for purposes of federal tax immunity, our cases have made no distinction between the obligations of the United States Treasury and the obligations of the Federal Credit Banks. See, *e. g., Tradesmens National Bank of Oklahoma* v. *Oklahoma Tax Comm'n*, 309 U. S. 560 (1940); *Schuylkill Trust Co.* v. *Pennsylvania*, 296 U. S. 113 (1935); *Federal Land Bank* v. *Crosland*, 261 U. S. 374 (1923); *Macallen Co.* v. *Massachusetts*, 279 U. S. 620 (1929); *Smith* v. *Kansas City Title & Trust Co.*, 255 U. S. 180 (1921).

[6] The nondiscrimination requirement applies to both franchise taxes and other nonproperty taxes. Cf. S. Rep. No. 909, 86th Cong., 1st Sess., 8 (1959). Because we hold that the Tennessee bank tax discriminates against federal obligations, we need not reach the question whether the tax may be characterized as a "franchise or other nonproperty ta[x] in lieu thereof."

of Federal Government property, including bonds and other securities, from taxation by the States. Our decisions have treated § 742 as principally a restatement of the constitutional rule. See, *e. g., New Jersey Realty Title Ins. Co.* v. *Division of Tax Appeals*, 338 U. S. 665, 672 (1950); *Missouri ex rel. Missouri Ins. Co.* v. *Gehner*, 281 U. S. 313, 321–322 (1930).

Under the constitutional rule of tax immunity established in *McCulloch* v. *Maryland*, 4 Wheat. 316 (1819), "States may not impose taxes directly on the Federal Government, nor may they impose taxes the legal incidence of which falls on the Federal Government." *United States* v. *County of Fresno*, 429 U. S. 452, 459 (1977) (footnote omitted). Where, as here, the economic but not the legal incidence of the tax falls on the Federal Government, such a tax generally does not violate the constitutional immunity if it does not discriminate against holders of federal property or those with whom the Federal Government deals. See, *e. g., United States* v. *County of Fresno, supra*, at 459–464; *United States* v. *City of Detroit*, 355 U. S. 466, 473 (1958); *Werner Machine Co.* v. *Director of Division of Taxation*, 350 U. S. 492 (1956); *Tradesmens National Bank of Oklahoma* v. *Oklahoma Tax Comm'n*, 309 U. S. 560, 564 (1940).[7]

A state tax that imposes a greater burden on holders of federal property than on holders of similar state property impermissibly discriminates against federal obligations. See, *e. g., United States* v. *County of Fresno, supra*, at 462 ("a state tax imposed on those who deal with the Federal Government" is unconstitutional if the tax "is imposed [un]equally on . . . similarly situated constituents of the State"). Our cases establish, however, that if the "tax remains the

---

[7] Although the scope of the Federal Government's constitutional tax immunity has been interpreted more narrowly in recent years, there has been no departure from the principle that state taxes are constitutionally invalid if they discriminate against the Government. See, *e. g., United States* v. *New Mexico*, 455 U. S. 720, 735, n. 11 (1982).

same whatever the character of the [property] may be, no claim can be sustained that this taxing statute discriminates against the federal obligations." *Werner Machine Co. v. Director of Division of Taxation, supra,* at 493–494. In *Schuylkill Trust Co. v. Pennsylvania,* 296 U. S. 113, 119–120 (1935), we held invalid a Pennsylvania tax levied upon the shares of a trust company that was measured by the company's net assets. In calculating net assets, the statute excluded shares owned by the trust company in Pennsylvania corporations but included shares owned in United States obligations. The Court found that the tax statute discriminated in favor of securities issued by Pennsylvania corporations and against United States bonds or other obligations.

Similarly, in *Phillips Chemical Co. v. Dumas Independent School District,* 361 U. S. 376 (1960), we held unconstitutional a local tax upon private lessees which was imposed on the estimated full value of the leased premises. The tax statute applied to lessees of United States Government property but not to lessees of exempt real property owned by the State and its political subdivisions. We held that the tax "discriminates unconstitutionally against the United States and its lessee." *Id.,* at 387.

It is clear that under the principles established in our previous cases, the Tennessee bank tax cannot be characterized as nondiscriminatory under § 742. Tennessee discriminates in favor of securities issued by Tennessee and its political subdivisions and against federal obligations. The State does so by including in the tax base income from federal obligations while excluding income from otherwise comparable state and local obligations.[8] We conclude, therefore, that

---

[8] We cannot regard the impact of the discrimination as *de minimis.* According to the United States, which filed a brief as *amicus curiae* in support of reversal, if all 50 States enacted provisions comparable to the Tennessee bank tax, the United States would incur additional annual borrowing costs estimated at $280 million at an interest rate of 12%. Brief for United States as *Amicus Curiae* 2.

the Tennessee bank tax impermissibly discriminates against the Federal Government and those with whom it deals.

The judgment of the Supreme Court of Tennessee is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*