In the Matter of BARNEY'S, INC., Petitioner, v DEPARTMENT OF FINANCE OF THE CITY OF NEW YORK, Respondent.

First Department, May 26, 1983

APPEARANCES OF COUNSEL

*Franklin S. Bonem* of counsel (*John W. Ritchie* and *Steven M. Kayman* with him on the brief; *Proskauer Rose Goetz & Mendelsohn,* attorneys), for petitioner.

*Jerome Weinstock* of counsel (*Cornelius F. Roche* and *Stanley Buchsbaum* with him on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel,* attorney), for respondent.

**OPINION OF THE COURT**

ASCH, J.

In this CPLR article 78 proceeding, transferred to this court by order of the Supreme Court, New York County

(CAHN, J.), entered on November 3, 1982, petitioner Barney's, Inc., challenges the final determination of the respondent Department of Finance of the City of New York, issued after a statutory hearing held pursuant to subdivision 1 of section R46-70.0 of the Administrative Code of the City of New York. That determination assessed petitioner with general corporation tax imposed by title R of chapter 46 of the Administrative Code in the principal amount of $74,357.96, plus interest of $14,071.93, for a total of $88,429.89 for the period from August 2, 1976 through July 28, 1979.

The New York City General Corporation Tax Law provides a formula for allocating the business income, within and without the city, of a corporation subject to the tax. Petitioner, which owns and operates the famous retail clothing business in New York City, allocated 100% of its business income to the City of New York for the tax years in question.

In addition to business income, the law provides a separate formula for allocating income from investments. Under this formula, the allocation percentages of the issuers of the owned corporate securities are weighted and averaged to arrive at an investment allocation percentage which the taxpayer then applies to all of its investment income, including income from obligations of the United States and the State of New York and from cash. Where a taxpayer owns only governmental securities or other securities whose issuers have no allocation percentage within the city, the income from obligations of the United States and New York and from cash is allocated in accordance with the taxpayer's regular business allocation percentage.

Petitioner's investments during the years in question ranged from approximately $6,500,000 to $8,500,000, upon which it received investment income in amounts ranging from approximately $176,000 to $416,000. These investment assets consisted solely of United States Government obligations, obligations of New York State or its political subdivisions, cash and State of Israel bonds. In addition, petitioner included 100 shares of Kerr-McGee stock, to, as the dissent fairly states, "presumably * * * raise the investment allocation formula from zero, and thus avoid the

application of the business allocation percentage to its investment income". If this business allocation percentage were utilized, then, *all* of its income from the United States and New York bonds and cash would have been allocated to New York. By investing in the 100 shares of Kerr-McGee stock, representing less than .1% of petitioner's total investment capital, petitioner was able to follow the general investment income formula and instead allocate less than .2% of its entire investment income to New York City during the years in question. This was based on solely the average of the allocation percentages of the 100 shares of Kerr-McGee Corp. stock and a zero percentage for the State of Israel bonds.

The tax law, however, recognizes that the investment allocation formula, with its provision for applying its percentage to income from United States and New York securities, might result in a serious distortion of what should reasonably be taxable. The law therefore provides that, if the investment allocation percentage "does not properly reflect the activity, business, income or capital of a taxpayer within the city," the Director of Finance may adjust the percentage "by excluding one or more assets in computing such percentage provided the income therefrom is also excluded in determining entire net income." (Administrative Code, § R46-4.0, subd 8.)

The commissioner found the extremely low investment allocation percentage to be a gross distortion of petitioner's investment activity, and therefore excluded the Kerr-McGee stock from consideration, which resulted in a recomputed computed allocation percentage of zero. Pursuant to section R46-4.0 (subd 3, par [b], cl [3]) of the Administrative Code, since the investment allocation percentage was now zero, the income from the cash and from obligations of the United States and New York was now allocated by the petitioner's business allocation percentage.

The petitioner does not challenge the propriety of the commissioner's action in applying the statutory language. Instead, it argues that the authority given to the Commissioner of Finance by the tax law is unconstitutional because it is impermissibly vague and an unconstitutional delegation of legislative power. We disagree and hold that

section R46-4.0 (subd 8) of the New York City Administrative Code is neither unconstitutionally vague nor an unconstitutional delegation of the legislative power.

Section 1 of article III of the New York State Constitution reads: "The legislative power of this State shall be vested in the Senate and Assembly." This has never meant, however, that the Legislature must be specific and detailed with regard to every power granted to an administrative agency. All that is necessary is that the Legislature set out some reasonable guidelines to be followed by the agency (see *City of Amsterdam v Helsby*, 37 NY2d 19, 27). The guidelines need be only as specific "as is reasonably practicable" in light of the type of area being regulated (*Martin v State Liq. Auth.*, 43 Misc 2d 682, 686, affd on opn of Special Term 15 NY2d 707).

The statute in question herein, subdivision 8 of section R46-4.0, provides: "8. If it shall appear to the director of finance that any business or investment allocation percentage determined as hereinabove provided does not properly reflect the activity, business, income or capital of a taxpayer within the city, the director of finance shall be authorized in his discretion, in the case of a business allocation percentage, to adjust it by (a) excluding one or more of the factors therein, (b) including one or more other factors, such as expenses, purchases, contract values (minus subcontract values), (c) excluding one or more assets in computing such allocation percentage, provided the income therefrom is also excluded in determining entire net income, or (d) any other similar or different method calculated to effect a fair and proper allocation of the income and capital reasonably attributable to the city, and in the case of an investment allocation percentage to adjust it by excluding one or more assets in computing such percentage provided the income therefrom is also excluded in determining entire net income. The director of finance from time to time shall publish all rulings of general public interest with respect to any application of the provisions of this subdivision."

The type of discretionary authority conferred upon the commissioner is common to all tax statutes since "[w]here it is difficult or impractical for the Legislature to lay down

a definite, comprehensive rule, a reasonable amount of discretion may be delegated to the administrative officials" (*Matter of Marburg v Cole,* 286 NY 202, 212). Thus, the State of New York has the same provision in its franchise tax (Tax Law, § 210, subd 8). The Internal Revenue Code also contains provisions where the Commissioner of Internal Revenue is given broad discretion. Thus, subdivision (b) of section 446 of title 26 of the United States Code states: "If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income." Similarly section 482 of title 26 of the United States Code provides that "the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among [affiliated corporations] if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such [affiliated corporations]."

Subdivision 8 of section R46-4.0 does not give the commissioner unlimited discretion. It does provide standards. The commissioner may adjust the allocation percentage if it "does not *properly* reflect the activity, business, income or capital of a taxpayer within the city" (emphasis added). The word "properly" sets a standard by which an administrative agency can operate (*Matter of Elite Dairy Prods. v Ten Eyck,* 271 NY 488). In that case the Court of Appeals said that the rule of reason must be used to see if one comes within the standard set by the word "properly" (see, also, *Matter of Mandel v Board of Regents,* 250 NY 173, the word "unfit" sets a standard for an administrative board; *Matter of Metropolitan Life Ins. Co. v New York State Labor Relations Bd.,* 280 NY 194, word "appropriate" sets a standard; *Matter of Trustees of Vil. of Saratoga Springs v Saratoga Gas, Elec. Light & Power Co.,* 191 NY 123, 146-147, word "reasonable" sets a standard).

In the statute in issue, the method of adjusting the allocation percentage is specifically prescribed by statute. The commissioner, once he has decided that the formula does not properly reflect the taxpayer's relationship to the

city, can *only* adjust the formula by excluding one or more assets from it. He may not adjust the formula in any other manner. Also, the percentage to be used by the commissioner, once he determines that the normal method is inappropriate under the law's standard, is not determined by him but specifically directed by the law (see Administrative Code, § R46-4.0, subd 3, par [b], cl [3]).

The dissent cites *Matter of Nicholas v Kahn* (47 NY2d 24) in support of the proposition that the absence of guidelines or departmental rulings under the provision in question is a defect in the statutory framework. However, *Nicholas* involved the question of whether the Legislature delegated to the Chairman of the Public Service Commission (PSC) the power to promulgate rules prohibiting employees of the PSC from owing any interest in certain businesses. The Court of Appeals held there was a proper delegation of power to make rules with respect to conflicts of interest. It went on to hold that since the chairman adopted a policy allowing for individual exemption from the rules, he was bound to promulgate adequate standards for the exemption procedure. Here, however, the commissioner is not making his own rules but solely following legislative guidelines. He is not therefore required to provide additional rules. The provision in the statute, *supra,* that rulings of general public interest shall be published from time to time also lends no support to petitioner. Before a ruling can be published, a taxpayer must make a request for one and the commissioner must rule on the request. It appears that, until recently, no requests by taxpayers had been made with regard to this issue, and as a result, no rulings on the issue have as yet been published.

Finally, we acquiesce in the rationale of Judge LEARNED HAND's famous dictum cited by the dissent that "a transaction, otherwise within an exception of the tax law, does not lose its immunity, because it is actuated by a desire to avoid, or, if one choose, to evade, taxation" (*Helvering v Gregory,* 69 F2d 809, 810). However, it seems noteworthy that in that case, the "elaborate scheme" employed by the taxpayer, which literally came within the terms of the tax law, was not allowed by either the Second Circuit or the United States Supreme Court (*Gregory v Helvering,* 293

US 465). Similarly, in the instant case, "the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended" (*Gregory v Helvering, supra,* at p 469). The legislative body, recognizing that situations may and will arise where the terms of the tax law could permit escape from taxation where it was not intended, authorized the commissioner by use of a narrow discretionary power to use an alternative method.

Accordingly, the determination of the respondent dated January 27, 1982, which imposed a general corporate tax deficiency upon petitioner of $74,357.96, plus interest of $14,071.93, for a total of $88,429.89 for the period from August 2, 1976 through July 28, 1979, should be confirmed, without costs or disbursements.

KUPFERMAN, J. P. (dissenting). I dissent. I would annul the deficiency assessment and declare subdivision 8 of section R46-4.0 of the Administrative Code of the City of New York void as an impermissible delegation of legislative authority without guidelines for the exercise of the discretion authorized.

In this transferred CPLR article 78 proceeding, petitioner, Barney's, Inc., challenges a final determination of general corporation tax deficiency assessed by respondent, the Department of Finance of the City of New York.

Barney's, Inc., which derives all of its business income from retail sales conducted within the City of New York, also realizes income from certain investment capital valued at between approximately $6,000,000 and $8,000,000 during the tax period in question.

Under title R of chapter 46 of the Administrative Code, investment income (§ R46-2.0, subd 5) may be taxed at a lower rate than business income (§ R46-2.0, subd 7), depending on the investment allocation formula (see § R46-4.0). Inasmuch as all of Barney's business income was derived from sales within the City of New York, Barney's had a business allocation percentage of 100% for the relevant taxable period.

In accordance with the formula contained in the Administrative Code for allocation of investment income to the

City of New York, petitioner computed its investment income percentage at less than 1%. Petitioner's investment portfolio during the relevant taxable period consisted almost entirely of obligations of the United States or of New York State or its subdivisions. Section R46-4.0 (subd 3, par [b], cl [3]) excludes such governmental obligations as factors in computing the investment allocation percentage, and provides that if the investment allocation percentage is zero, then the business allocation percentage, in this case 100%, will apply.

Presumably to raise the investment allocation formula from zero, and thus avoid the application of the business allocation percentage to its investment income, petitioner included 100 shares of Kerr-McGee stock. Section R46-4.0 (subd 3, par [b], cl [1]) provides that, for purposes of computing the investment allocation percentage with respect to stock, the allocation percentage to the City of New York of the issuer of that stock will be used. Thus, petitioner's investment income allocation percentage for the income from its investment capital was derived by averaging the allocation formula for Kerr-McGee with the zero allocation percentage for certain State of Israel bonds held by petitioner, all in strict conformity with the dictates of the Administrative Code.

The Department of Finance, acting under the authority of subdivision 8 of section R46-4.0,* excluded the Kerr-McGee stock from the computation of petitioner's investment allocation formula, leaving only governmental obligations, with the result that petitioner's investment income would be taxed at the same rate as its business income.

Petitioner argues that the discretion authorized by subdivision 8 is impermissibly vague and an unconstitutional

---

* That subdivision provides in pertinent part: "8. If it shall appear to the director of finance that any business or investment allocation percentage determined as hereinabove provided does not properly reflect the activity, business, income or capital of a taxpayer within the city, the director of finance shall be authorized *in his discretion* * * * in the case of an investment allocation percentage to adjust it by excluding one or more assets in computing such percentage provided the income therefrom is also excluded in determining entire net income. The director of finance from time to time shall publish all rulings of general public interest with respect to any application of the provisions of this subdivision" (emphasis supplied).

delegation of legislative authority because no guidelines are provided for its exercise.

Respondent, the Department of Finance, concedes that it has issued no rulings interpreting the section, but states that it has received no requests for rulings. Perhaps the discretion authorized by the subdivision has not previously been exercised or challenged.

In computing its tax liability, a taxpayer should not be at the mercy of the tax collector's whim, but should be able to project with some degree of exactitude the amounts due.

The acquisition of the Kerr-McGee shares, though perhaps motivated solely by a desire to decrease taxes, was not a sham transaction. In the words of LEARNED HAND, "a transaction, otherwise within an exception of the tax law, does not lose its immunity, because it is actuated by a desire to avoid, or, if one choose, to evade taxation. Any one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes." (See *Helvering v Gregory,* 69 F2d 809, 810; see, also, *Mapco Inc. v United States,* 556 F2d 1107, 1110.)

By attempting to reduce its tax obligation by purchasing the Kerr-McGee stock, petitioner has not crossed the line between permissible avoidance and impermissible evasion, but has merely attempted to avail itself to the full of what the law permits. (See *Bullen v Wisconsin,* 240 US 625, 630.)

The defect in the statutory framework of the Administrative Code is that it is unclear what the law permits. A taxpayer is not afforded notice, by guidelines or departmental rulings, of when or how the department will exercise its discretion. Such guidelines are necessary to prevent administrative action pursuant to a grant of unfettered discretion from being arbitrary and capricious as a matter of law. (See *Matter of Nicholas v Kahn,* 47 NY2d 24, 34.)

Accordingly, the petition should be granted by annulling the final determination of general business tax deficiency and declaring subdivision 8 of section R46-4.0 of the Administrative Code void.

SANDLER, SILVERMAN and ALEXANDER, JJ., concur with ASCH, J.; KUPFERMAN, J. P., dissents in an opinion.

Determination of respondent dated January 27, 1982, confirmed, without costs and without disbursements.