66 N.Y.2d 243 (1985)
In the Matter of Forbes, Inc., Appellant,
v.
Department of Finance of the City of New York, Respondent.
Court of Appeals of the State of New York.
Argued October 10, 1985.
Decided November 19, 1985.
Kenneth A. Caruso, Clarence W. Olmstead, Jr., William E. Flowers and Daniel Lavin for appellant.
Frederick A. O. Schwarz, Jr., Corporation Counsel (Peter Rabinowitz and Glenn Newman of counsel), for respondent.
David Sachs and Mary R. D'Agostino for Bankers Trust New York Corporation, amicus curiae.
Chief Judge WACHTLER and Judges JASEN, MEYER, ALEXANDER and TITONE concur; Judge SIMONS taking no part.
*245 KAYE, J.
By rendering investments in obligations of the Federal Government less attractive than other investments, in the calculation of taxes due under New York City's General Corporation Tax, the City tax discriminates against Federal obligations within the meaning of the Federal statute permitting only nondiscriminatory franchise taxes to be levied on United States obligations (31 USC former § 742 [renum § 3124]), and therefore violates the supremacy clause of the United States Constitution (US Const, art VI, cl 2).

THE CITY'S TAX LAW
New York City imposes a general corporation tax, based upon net income, on both domestic and foreign corporations "[f]or the privilege of doing business, or of employing capital, or of owning or leasing property in the city in a corporate or organized capacity, or of maintaining an office in the city" (Administrative Code of City of New York § R46-3.0 [1]). Consistent with this purpose, the City has established rules for allocating corporate income for tax purposes, depending upon the connection between that income and the City. The allocation rules differ for income derived from a taxpayer's business operations (business income) and income derived from a taxpayer's investments (investment income). Allocated income is taxed at a rate of 9%.
The portion of a taxpayer's business income allocated to the City is determined by multiplying the taxpayer's total business income by the taxpayer's "business allocation percentage" (BAP) (see, Administrative Code § R46-4.0 [3] [a]). The BAP essentially seeks to measure the percentage of the taxpayer's business income derived from property, sales, services and receipts in the City. Thus, if a taxpayer conducts 60% of its business in the City, its BAP is 60%, and it will be taxed on 60% of its business income.
The portion of a taxpayer's investment income allocated to the City, in contrast, is derived by measuring the contacts of the issuers of the obligations or securities in which the taxpayer invests, rather than the contacts of the taxpayer. In the case of corporate obligations, this measurement, called the *246 "investment allocation percentage" (IAP), is the issuer's BAP. Thus, if a taxpayer's investments consist solely of the securities of one corporation, the portion of the taxpayer's investment income to be allocated to the City is determined by multiplying the taxpayer's total investment income by the BAP of the corporation issuing those securities (see, Administrative Code § R46-4.0 [3] [b]).
Although investment income from government obligations is treated somewhat differently, that difference logically flows from the principle that investment income is ordinarily taxable to the extent that the issuer has quantifiable contacts with the City. The City (and the taxpayer) can determine the BAP of an issuer of a corporate obligation simply by examining the issuer's report containing this information (Administrative Code § R46-4.0 [3] [b] [1]), which must be filed by all corporations doing business in the City (Administrative Code § R46-5.0). The absence of any report by a corporate issuer would indicate no business in the City, and the issuer's BAP (which becomes the taxpayer's IAP with respect to that issue) would be zero. Governmental authorities, however, do not file such returns or reports with the City from which the extent of their connection with the City might be measured. Since the City cannot readily quantify those contacts, it has developed the following rules to determine a taxpayer's IAP with respect to investments in government obligations (Administrative Code § R46-4.0 [3] [b] [3]).
 Obligations of the 49 States other than New York are allocated wholly outside the City.
 Obligations of the Federal Government and of New York State, as well as cash and cash equivalents, are allocated in accordance with the taxpayer's IAP based on all other investments. However, if a taxpayer's IAP is zero  i.e., if a taxpayer has not invested in corporate obligations or has invested in corporate obligations of issuers all of which have BAP's of zero  income from these obligations is allocated based on the taxpayer's BAP.
Again applying the principle that investment income is taxable to the extent of the issuer's connection with the City, the theory behind these rules appears to be that States other than New York generally have little if any contact with the City. Therefore, it is appropriate to allocate their obligations entirely outside the City. The Federal Government and New York State, on the other hand, plainly have a substantial *247 presence in the City. But because that presence is unquantified, it is necessary and appropriate to attribute to their obligations the allocation percentage of a taxpayer's investments where the allocation percentages are more than zero and quantifiable.
Administrative Code § R46-4.0 (3) (b) sets forth the method for determining a taxpayer's investment allocation percentage. In essence, the taxpayer's IAP is a fraction. The numerator is the combined allocated fair market value of all corporate obligations held by a taxpayer. The denominator is the taxpayer's total investment capital, including the combined fair market value of corporate securities and the obligations of the other 49 States, but excluding "obligations of the United States and its instrumentalities and obligations of the state of New York, its political subdivisions and its instrumentalities", as well as cash or cash equivalents, such as bank accounts.

APPELLANT'S TAX RETURNS
An obvious objective of tax planning, given the City's tax scheme, would be for a taxpayer to minimize the tax on its investment income by investing in (a) a small amount of corporate obligations issued by corporations with low BAP's and (b) a large amount of Federal obligations. The low IAP attributable to corporate obligations having a low BAP would thus apply to a taxpayer's entire investment portfolio, lowering its taxable investment income. Appellant's investment portfolio for tax year 1978 indeed reflects this planning:

 Issuer IAP Value
 Sheraton 4.8438% $ 33,383
 Alabama Power 0% 34,547
 United States Not Applicable 6,931,345
 Bank Accounts Not Applicable 579,808
 ______________ _________
 2.38039% 7,579,083

Appellant claimed in its 1978 return that its total income from these investments was $342,669, and that its allocated investment income was $8,157 ($342,669 × 2.38039%).
The City audited appellant's tax returns for each tax year in issue on this appeal (1977, 1978 and 1979), and adjusted appellant's IAP by excluding its investment in Sheraton corporate obligations pursuant to Administrative Code § R46-4.0 (8), which provides in relevant part: "If it shall appear to the director of finance that any business or investment allocation *248 percentage determined as hereinabove provided does not properly reflect the activity, business, income or capital of a taxpayer within the city, the director of finance shall be authorized in his discretion * * * in the case of an investment allocation percentage to adjust it by excluding one or more assets in computing such percentage provided the income therefrom is also excluded in determining entire net income." As a result of the exclusion, appellant's income attributable to its Sheraton investment was not taxed at all. But because the exclusion reduced appellant's IAP to zero, the remaining investment income derived from Federal obligations and bank accounts was allocated based upon appellant's BAP of 60% rather than its IAP of 2.38%, in accordance with Administrative Code § R46-4.0 (3) (b) (3). The net result of these recalculations was that appellant was assessed additional taxes in excess of $68,000, plus interest, which thereafter became the subject of this appeal.

THE 18% RULE
On appellant's petition to the Department of Finance for a redetermination of the additional assessment, the auditor who had examined the returns testified as to why he had excluded investments in Sheraton. According to the auditor, for each tax year he calculated the ratio between the value of appellant's investments in corporate obligations and the total value of its investments, which yielded a percentage well under 2%. For example, for the tax year 1978, the percentage was 0.896% ($67,930 divided by $7,579,083). The auditor testified he had oral instructions that if the ratio were less than 18%, he was automatically to invoke the discretionary power provided by section R46-4.0 (8). Based upon these instructions, he eliminated appellant's "non-zero investment allocation percentage securities," which consisted of the Sheraton obligations. This testimony was credited by the referee who heard appellant's petition for redetermination, and is set forth in the referee's findings. Nonetheless, the referee concluded that appellant had "not demonstrated that the Commissioner of Finance has abused his discretion, nor that the Investment Allocation Percentages which [appellant] calculated properly reflected its investment activity. Accordingly, the Business Allocation Percentages were correctly applied at the audit level to [appellant's] interest income from Government Obligations and Bank Certificates of Deposit."

*249 THE BURDEN ON FEDERAL OBLIGATIONS
The City tax law places a greater burden on taxpayers holding Federal obligations, thus making them less attractive investments, in two ways. First, the law discriminates in favor of the obligations of the other 49 States. Second, the law discriminates in favor of corporate obligations.
The first form of discrimination arises out of the method for calculating a taxpayer's IAP. While the numerator is based on the value of corporate obligations, the denominator is based on the total value of investment capital, excluding United States obligations and bank accounts. Since the IAP is a fraction, the taxpayer is disadvantaged if the denominator is smaller. The following comparison of appellant's 1978 tax figures with those of a hypothetical taxpayer with otherwise identical investments  except for a presumed investment in Connecticut bonds rather than Federal obligations  is illustrative:

 Hypothetical
 Appellant Taxpayer
 Sheraton/Alabama $ 67,930 $ 67,930
 IAP (2.38039%) (2.38039%)
 United States 6,931,345 0
 Connecticut 0 6,931,345
 Bank Accounts 579,808 579,808
 _________ _________
 7,579,083 7,579,083

In both cases, the numerator for calculating the IAP will be the same. The fair market value of the corporate obligations ($67,930) is multiplied by the issuer's BAP (2.38039%). The resulting figure is $1,617. The denominators, however, are different. In appellant's return the denominator is $67,930, the fair market value of total investment capital excluding United States obligations and bank accounts. In the hypothetical return, the denominator will be $6,999,275  the fair market value of the corporate and Connecticut obligations. Thus, appellant would have an IAP of 2.38039%, while the hypothetical taxpayer would have an IAP of .0231%. In 1978, appellant had total investment income of $342,669. It determined its taxable investment income by multiplying that figure by its IAP (2.38039%), resulting in a figure of $8,157. At a 9% tax rate, the tax on its investment income was $734. Assuming that appellant had invested in Connecticut rather than Federal obligations and obtained the same total investment *250 income, its taxable investment income would have been $79 ($342,669 × .0231%), yielding a tax of only $7.
The second form of discrimination arises out of the 18% rule. In effect, the rule penalizes a taxpayer who invests 82% or more of its capital in obligations other than certain corporate obligations  including Federal obligations. Appellant's total investment income for the tax year 1978 was $342,669. Assuming that the income attributable to Sheraton obligations was $3,000, the 18% rule had the following effect:

 Without 18% Rule With 18% Rule
 Preallocation
 Investment
 Income $342,669 $339,669
 Allocation
 Percentage 2.38039% 60%
 Taxable
 Investment
 Income 8,157 203,801
 Tax (9%) 734 18,342

Moreover, had appellant invested less than 82% of its investment capital in Federal obligations, and instead invested more in corporate obligations having low BAP's, it would have escaped the 18% rule and paid less tax. For example, assuming appellant had realized the same investment income by purchasing $1,067,930 in corporate obligations (rather than $67,930) and $5,931,345 in Federal obligations (rather than $6,931,345), and assuming that the allocation percentage of the additional corporate obligations was also 2.38%, appellant's tax bill would have been $17,608 lower.

THE FEDERAL STATUTE
Appellant urges that the City's tax is unconstitutional because it conflicted with 31 USC § 742 (renum 31 USC § 3124 [a]), which provided in relevant part: "[A]ll stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes." *251 Appellant's position is that the City's tax is a franchise tax that impermissibly discriminates against obligations of the United States.[*]
Section 742 was "`principally a restatement of the constitutional rule'" (First Natl. Bank v Bartow County Bd., 470 US ___, 105 S Ct 1516, 1522, quoting Memphis Bank & Trust Co. v Garner, 459 US 392, 397) established by the Supreme Court beginning with McCulloch v Maryland (4 Wheat [17 US] 316) that "`States may not impose taxes directly on the Federal Government, nor may they impose taxes the legal incidence of which falls on the Federal Government'" (Memphis Bank & Trust Co. v Garner, 459 US 392, 397, supra, quoting United States v County of Fresno, 429 US 452, 459). Section 742 and its predecessors were designed "`to prevent taxes which diminish in the slightest degree the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit'" (Memphis Bank & Trust Co. v Garner, 459 US 392, 396, supra, quoting Smith v Davis, 323 US 111, 117). To this end, former section 742 provided "a `sweeping' exemption for federal obligations" (First Natl. Bank v Bartow, 470 US ___, 105 S Ct 1516, 1520, supra, quoting American Bank & Trust Co. v Dallas County, 463 US 855, 862). "Congress intended to sweep away formal distinctions and to invalidate all taxes measured directly or indirectly by the value of federal obligations, except those specified" in the exclusion (American Bank & Trust Co. v Dallas County, 463 US 855, 867, supra).
The exclusion contained in section 742 for nondiscriminatory franchise taxes was added to the statute in 1959 and embodies a court-created exception for "nondiscriminatory taxes imposed on discrete property interests such as corporate shares or business franchises, even though the value of that *252 discrete interest was measured by the underlying assets, including United States obligations" (American Bank & Trust Co. v Dallas County, 463 US 855, 858, supra). A franchise tax is constitutional so long as it "remains the same whatever the character of the corporate assets may be" (Werner Co. v Director of Taxation, 350 US 492, 493-494). In Werner, the court upheld a franchise tax based upon a corporation's net worth, which included the value of Federal bonds held by the taxpayer. On the other hand, a "state tax that imposes a greater burden on holders of federal property than on holders of similar state property impermissibly discriminates against federal obligations" (Memphis Bank & Trust Co. v Garner, 459 US 392, 397, supra).
As a practical matter, the City tax unquestionably imposes a greater burden on holders of Federal obligations than on holders of certain other obligations, and thereby diminishes to some degree the investment attractiveness of Federal obligations. Excluding Federal obligations from the denominator of the IAP, while including obligations of other States, effectively places a greater tax on the former than on the latter. The 18% rule compounds the problem, by disadvantaging taxpayers who invest 82% or more of the value of their portfolios in obligations other than those of corporations with low BAP's, including Federal obligations.
The City concedes that its tax has these effects, but argues that the tax is not discriminatory both because it has a rational basis and because it does not favor New York State obligations over Federal obligations. Neither argument, however, would save the tax.
There is undoubtedly a rational basis for both the definition of IAP and the 18% rule. It is not irrational to allocate investment income by the extent to which an issuer does business in the City, and it is not irrational to conclude that the Federal Government has greater contacts with the City than do other States. Similarly, it is not irrational to seek to correct distortions that may occur where, as here, a taxpayer virtually avoids all tax on investment income by investing a small amount in the obligations of corporations having little contact with the City and the balance in zero-valued securities.
That the disparities may be rational for due process or equal protection purposes, however, is not relevant under section 742. Memphis Bank & Trust Co. v Garner (459 US 392, supra) *253 makes clear that the controlling issue under section 742 is simply whether the tax adversely affects Federal obligations in comparison to other obligations. Phillips Co. v Dumas School Dist. (361 US 376), heavily relied upon by the City, in fact undercuts its position. In Phillips, the school district argued that there was a rational basis for its tax on lessees of Federally owned real property, which was more onerous than the corresponding tax on lessees of State property. But the Supreme Court rejected this contention and held the tax unconstitutional because the State had an obligation to "treat those who deal with the [Federal] Government as well as it treats those with whom it deals itself" (361 US, at p 385).
It is also beside the point that the tax scheme does not discriminate in favor of obligations of the State of New York. Typically, cases raising the issue of discrimination have involved situations in which States favored their own obligations (see, e.g., Memphis Bank & Trust Co. v Garner, 459 US 392, supra). But nothing in the statute suggests that it should be so limited. To the contrary, the statutory goal of preserving Federal borrowing power is threatened whenever any other class of obligations is taxed more leniently than Federal obligations. In Schuylkill Trust Co. v Pennsylvania (296 US 113), the State statute excluded the value of shares of Pennsylvania corporations held by the taxpayer. Although the statute favored certain corporate (rather than Commonwealth of Pennsylvania) obligations, the court nonetheless found it improper: "If the burden of the tax be lifted in respect of some securities (as it is by confession from those issued by certain Pennsylvania corporations) it must necessarily fall on the remaining securities owned by the company" (296 US, at p 120). Similarly, cases such as United States v County of Fresno (429 US 452, supra) and United States v City of Detroit (355 US 466) support appellant's position, not respondent's. In County of Fresno, for example, California imposed a tax on renters of otherwise tax-exempt real property (including property owned by the Federal Government). The tax was constitutional, however, because the State imposed a corresponding property tax on owners of nonexempt property which was passed on to renters. Consequently, those who rented from the Federal Government were "no worse off under California tax laws than those who work[ed] for private employers and rent[ed] houses in the private sector" (429 US, at p 465). Here, in contrast, appellant is "worse off" because it invested in *254 Federal obligations rather than obligations of "the private sector" or of States other than New York.
Accordingly, the judgment of the Appellate Division should be reversed, with costs, the petition granted, the determination of respondent Department of Finance annulled, and the matter remitted to respondent for readjustment of appellant's tax liability for the tax years in issue (a) by calculating appellant's IAP as if its Federal obligations were obligations of a State other than New York and (b) without adjusting appellant's IAP pursuant to section R46-4.0 (8).
Judgment reversed, with costs, petition granted, determination of respondent Department of Finance annulled, and matter remitted to Supreme Court, New York County, with directions to remand to respondent for further proceedings in accordance with the opinion herein.
NOTES
[*] Appellant also argues that the 18% rule is invalid because it is a rule or regulation required to be published pursuant to New York City Charter § 1105. While in general constitutional questions are not reached when a case can be decided on a nonconstitutional ground (see, Matter of Beach v Shanley, 62 N.Y.2d 241, 254), here even a determination that the 18% rule should have been published would not dispose of the more fundamental question whether on remittal the Commissioner could, in view of the discrimination, constitutionally exercise any discretion. Neither ground urged by appellant on this appeal was before us in Matter of Barney's, Inc. v Department of Fin. (93 AD2d 642, affd 61 N.Y.2d 786).

In view of our conclusion that the tax is discriminatory, we need not reach the issue, tendered in the brief of the amicus curiae, whether it is indeed even a franchise tax.