**MINNEHOMA FINANCIAL COMPANY,**
a corporation, Appellant,

v.

The **OKLAHOMA TAX COMMISSION**
et al., Appellees.

No. 43745.

Supreme Court of Oklahoma.

July 5, 1972.

R. Dobie Langenkamp, R. Thomas Seymour, Harry L. Seay, III, for appellant; Doerner, Stuart, Saunders, Daniel & Langenkamp, Tulsa, of counsel.

Albert D. Lynn, Mike Tapp, Oklahoma City, for appellee, Oklahoma Tax Commission.

LAVENDER, Justice.

This is an appeal, by Minnehoma Financial Company (hereinafter called "MFC"), from an order of the Oklahoma Tax Com-

mission denying its protests to proposed assessments of additional income tax for the calendar years 1961 and 1963. The additional tax for 1961 is in the principal amount of $2,865.71, and for 1963 is in the principal amount of $3,702.37.

In each instance, the proposed additional tax resulted from a field audit and, based thereon, the disallowance by the Commission of an item of deduction from gross income claimed by MFC in its return and/or supporting schedules. For 1961 the disallowed deduction was in the amount of $74,508.48, and for 1963 the disallowed deduction was in the amount of $96,261.78.

For 1961, the $74,508.48 item was listed on the face of the return as "Federal Income Tax" and on the attached schedules as "Payment to Parent—Tax Benefit." For 1963, the face of the return showed only the "Net Income Taxed" and the computation of the tax less payments thereon, and the $96,261.78 item was listed on the attached schedules as "Federal Income Tax Deduction Prorated 89.8%."

The Commission's notice of each proposed assessment of additional income tax stated that a field audit disclosed that MFC was one of the subsidiaries of Spartan Aircraft Company; that a consolidated federal return was filed showing a net loss and that no federal income tax was paid; and that "Since no federal income tax was paid, the amount claimed is not an allowable deduction."

Each protest filed by MFC alleged that the disallowed amount had been paid to Spartan Aircraft Company by MFC for MFC's use of Spartan's federal consolidated net operating loss. As the ground upon which the taxpayer relied, each protest stated:

"The Oklahoma Income Tax Law provides for a deduction for all necessary business expenses. Although the protested amount was inadvertently placed on the space for Federal income tax deduction on the face of the original return, supporting schedules show that *this amount was claimed as a business expense and not as a Federal income tax deduction.*"

(Emphasis supplied)

After a hearing thereon, the Tax Commission entered the order denying both protests. In that order, the Commission found, among other things, that the payments sought to be deducted were not payments of federal income tax to the Internal Revenue Service but were, in fact, payments made to MFC's parent corporation, Spartan Aircraft Company, in connection with consolidated federal income tax returns for the same years filed by Spartan for itself and its subsidiary corporations. The Commission also found, in that order, that a deduction for "taxes paid" (as the items were listed in MFC's Oklahoma returns) is allowable under the Oklahoma income tax statutes only if such payment is, in fact, made to a governmental taxing authority; and that a payment made to a parent company in lieu of a payment of federal income tax, pursuant to an agreement for the filing of a consolidated return, is not deductible as an "ordinary and necessary" expense paid during the taxable year (as claimed by MFC in its protests).

MFC's basic grounds for this appeal, specified in its petition in error herein as required by the statute now appearing as 68 O.S.1971, § 225, are that the Commission erred in refusing to allow the deduction of the items as "ordinary and necessary business expense" provided for in paragraph (a) of 68 O.S.1961, § 880. The petition in error does not suggest that the items should have been allowed as federal "taxes paid," provided for in paragraph (c) of Section 880.

This controversy arose because of certain provisions of the federal Internal Revenue Code, which were outlined by witnesses at the hearing before the Commission.

It appears from the evidence that, under that code, a net operating loss during any taxable year of a corporation may be carried forward and used to offset otherwise taxable income during any of the next five taxable years of the taxpayer, or, with per-

mission of the Internal Revenue Service, may be carried backward and used to offset income during any of the preceding three taxable years of the taxpayer, upon which the tax has been paid, for a resulting refund of taxes for such prior year or years.

It also appears from the evidence that, under the federal code, where at least eighty per cent of the voting stock of any corporation is owned by another corporation and each such subsidiary corporation executes the required consent thereto, a parent corporation may file a consolidated federal income tax return for itself and all of its subsidiaries, in which a net operating loss shown by any of the affiliated corporations offsets otherwise taxable income of any of the other affiliated corporations. The provisions concerning corporate operating loss carry-overs (forward and backward) apply to such consolidated returns. If a consolidated return is filed for any taxable year, the federal tax code requires the filing of consolidated returns for all such affiliated corporations for each taxable year thereafter, but relieves the subsidiaries of the responsibility of filing quarterly estimated income returns, until the affiliation of one of them has terminated, or another corporation is added to the affiliated group, or the Commissioner of Internal Revenue, upon a change in the law, issues a blanket order permitting all affiliated groups which had been filing consolidated returns to elect to change over to separate returns for each corporation.

The Tax Commission does not question the testimony concerning the provisions of the federal Internal Revenue Code, so we accept it as correct for the purposes of this case.

. At all times involved herein, MFC owned all of the stock of two other corporations, and Spartan Aircraft Company (hereinafter called "Spartan") owned all of the stock of MFC and of two other corporations. MFC and Spartan were Delaware corporations, transacting business in Oklahoma and at least one other state, with principal offices in Tulsa, Oklahoma, and were subject to Oklahoma's income tax laws. All federal and state income tax returns were made on an accrual and calendar-year basis.

For several years prior to 1960, Spartan's separate federal returns had shown operating losses and it paid no federal income tax for those years. At the end of 1959, its aggregate operating losses for 1957, 1958 and 1959 exceeded two million dollars. Because of its no-tax position in prior years, that balance could only be used to offset Spartan profits in succeeding years. The portion thereof accrued during any year would be lost forever to the extent it was not used to offset a profit shown during one or more of the five years thereafter. If its operating-loss position continued through 1964, that entire balance of losses would be lost forever. In the absence of unusual circumstances, most of it would be lost by the end of 1964, even if Spartan showed taxable income during each year during the interim. Of course, in any event, the balance available to carry forward would vary from year to year and could, possibly, get to zero.

During 1960, according to the evidence, Spartan and MFC, acting through their proper officers, entered into an oral agreement in which it was agreed that consolidated federal income tax returns would be filed for all of the affiliated corporations and MFC would give its consent thereto, on the required form each year. Spartan agreed to assume full responsibility for the payment of any and all income tax that would be due under such consolidated returns. MFC agreed to continue to accrue on its books, and to pay to Spartan, each year, an amount equal to the amount of federal income tax MFC would have been required to pay for that year if separate returns for the affiliated companies were filed. According to the Senior Vice President of Spartan during 1960 (who made the agreement with MFC's president), they also agreed that, for any year that Spartan showed a net profit and MFC showed an operating loss, Spartan would

pay to MFC "an amount adequate to compensate it for its consent to file a consolidated return."

The record contains no testimony that Spartan entered into any such agreement with any of the other affiliated corporations.

No mention is made in the evidence of any agreement concerning what would happen in the event that both Spartan and MFC showed operating losses for any year, or concerning the disposition of any refund which Spartan might receive on the basis of a consolidated loss for any year subsequent to actual payment of tax on consolidated income.

According to the evidence, consolidated returns for all of the affiliated corporations, accompanied by each subsidiary's consent thereto, on the required form therefor, were filed for the years 1960 and 1961 and (although during 1962 the Commissioner of Internal Revenue issued a blanket order permitting a change to separate returns) for 1962 and 1963. Each one showed an operating loss for Spartan and for the affiliated group and no tax due. MFC showed an operating loss for 1960, and a profit for 1961 and 1963. Its profit-or-loss position for 1962 is not disclosed, but is not material herein.

In accordance with the oral agreement, MFC continued to accrue on its books, and paid to Spartan, $129,440.90 during 1961, and $107,195.75 during 1963, as the equivalent of what its federal income tax liability would have been for those years under separate returns.

According to the testimony of an accountant for Spartan, those payments were recorded on Spartan's books as ordinary income. And, because only a portion of MFC's income for those years was attributable to business transacted in Oklahoma, it apportioned its deductions on the same basis as its income, and deducted $74,508.48 of the 1961 payment and $96,261.78 of the 1963 payment, on its Oklahoma returns for those years.

Those are the items not allowed by the Tax Commission, resulting in the additional income tax claimed by the Commission and protested by MFC.

■ MFC contends, primarily, that those items are proper deductions for ordinary and necessary expenses authorized by 68 O.S.1961, § 880 and paragraph (a) thereof:

"In computing the net income, there shall be allowed as deductions from gross income:

"(a) All the ordinary and necessary expenses paid during the taxable year, in carrying on any trade or business, or in the production of income required to be included in gross income under this Act, * * *."

It argues that the payments constitute ordinary and necessary expenses incurred in carrying on MFC's business *because* they were made pursuant to a binding contract for a valid and lawful purpose.

The argument that the payments were made pursuant to a valid and binding contract is based upon the matter of alleged mutual considerations in the form of benefits to accrue to MFC, as well as in the form of detriments to be suffered by Spartan in return for MFC's payments to Spartan under the agreement.

However, except for the agreement to file consolidated returns and, impliedly, to comply with the federal code and regulations with respect thereto, the only real agreement between Spartan and MFC concerned MFC's payments to Spartan each year that MFC showed taxable income, Spartan's payment of any tax due under consolidated returns, and payments to be made by Spartan to MFC any year that Spartan showed taxable income, and MFC showed a loss, on a separate return basis. All other benefits and detriments were provided for in the federal Internal Revenue Code.

As we see the situation, the portion of the agreement concerning payments to be made by Spartan to MFC for any year that Spartan shows taxable income and MFC

shows a loss does not affect the rest of the agreement and is not involved herein. Our further reference to the agreement concerns only the rest of the agreement.

Under the agreement, each and every year for which MFC's separate return shows taxable income, *regardless of any other circumstances whatsoever*, MFC is required to pay to Spartan the federal tax-equivalent of MFC's taxable income for that year, and the money becomes Spartan's money to do with as it pleases.

For this reason, MFC can receive no monetary benefit whatsoever from Spartan's promise to pay any and all tax due on any consolidated federal return, or from the use of consolidated operating losses to offset MFC's taxable income for any year. It is out exactly the same amount it would have paid in federal income tax on the same income under separate returns. And, an operating loss of MFC for any year would increase the group's balance of operating losses available to offset taxable income of any of the affiliates, including Spartan.

For the same reason, Spartan can suffer no monetary detriment (insofar as MFC is concerned) from its promise to pay any tax due on a consolidated return, and can suffer no monetary detriment from the use of consolidated operating losses to offset MFC's taxable income for any year. This is true whether the operating losses involved be attributable entirely, or in part, to Spartan losses or be attributable entirely, or in part, to losses by MFC and/or other subsidiaries. Unless the entire amount of MFC's payment for any year is needed to pay the tax on MFC's taxable income for that year, Spartan will profit, to some extent, from each payment. Whether or not any group losses for the same year, or any proceeding year, are used to offset MFC's taxable income for any year, Spartan receives from MFC, as its own separate income, the tax-equivalent, in cash, of MFC's taxable income for that year. To the extent the money is not needed to pay the tax *on the consolidated in-*

*come* for that year, and whether or not any tax has been paid on income of Spartan or any other affiliate for any of the preceding three years, each payment by MFC benefits Spartan exactly as much as a refund to Spartan alone of tax paid by Spartan prior to 1960, and no operating losses whatsoever are used in the process.

MFC also argues that it is benefitted by being relieved of the necessity of preparing separate quarterly federal tax estimates and pre-paying the tax indicated thereby, and by getting to keep that much money that much longer, in addition to being relieved of the necessity of preparing separate annual federal returns. As a practical matter, MFC must prepare the equivalent of those federal estimates and returns in order to properly prepare its separate Oklahoma estimates and returns. And, it would be necessary for MFC to prepare the equivalent of those federal estimates and returns in order to comply with its promise to accrue on its books (of necessity, as a special reserve fund), and to pay to Spartan, each year, the same amount it would pay as federal income tax if it were filing a separate return for that year. The amount so accrued on its books for that purpose at any particular time could not, in good faith, be used by MFC for any other purpose.

Even if it could be said that the agreement constituted a valid, binding and enforceable contract, it would not, necessarily, follow that the payments made by MFC thereunder would constitute "ordinary and necessary expenses" paid in carrying on MFC's business, within the contemplation of paragraph (a) of Section 880, supra.

Welch v. Helvering, Commissioner of Internal Revenue (1933), 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212, cited by MFC for statements concerning what is "ordinary" and what is "necessary," involved the deduction from gross income provided in the federal tax code for "ordinary and necessary expenses" incurred or paid during the taxable year, "in carrying on any trade or business." The payments in question

therein, disallowed by the Commissioner as the basis for the additional tax involved, were made to the creditors of a bankrupt corporation by one of its principal stockholders to strengthen his own credit and standing.

In that case, the court assumed that the payments were necessary for the development of the taxpayer's business as a commision agent, at least in the sense that they were "appropriate and helpful" to that end. It then said that the problem is not solved when the payments are characterized as necessary; that it must be determined whether they are both ordinary and necessary. The court mentioned that the expense of a lawsuit affecting the safety of a business is an "ordinary" one because "we know from experience that payments for that purpose, whether the amount is large or small, are the common and accepted means of defense against attack."

In upholding the tax assessed in that case upon the basis of the Commissioner's disallowance of the claimed deductions, the court applied the following general rule:

" * * * Unless we can say from facts within our knowledge that these are ordinary and necessary expenses according to the ways and conduct and the forms of speech prevailing in the business world, the tax must be confirmed.

* * *."

In the present case, all of the benefits under the agreement would inure to Spartan, which could suffer no detriment thereunder, and MFC could not, and did not, receive anything, or derive any benefit, in return for any of the money paid to Spartan. We cannot say, from facts within our knowledge, that such a one-way arrangement is the common and accepted way, or even a common and accepted way, of handling monetary matters connected with federal consolidated income tax returns for affiliated corporations. We cannot see that MFC's payments to Spartan under their agreement were at all helpful in the carrying on of MFC's business or in the production (or protection) of income required by law to be included in its gross income on its Oklahoma returns for the years in question.

In the circumstances, if the payments in question were not, in effect, dividends paid to MFC's only stockholder, they were purely gratuitous. They were not ordinary and necessary expenses paid in the carrying on of MFC's business, or in the production of its income required to be included in its gross income on its Oklahoma returns.

MFC's primary contention cannot be sustained.

Our disposition of MFC's primary contention makes it unnecessary to discuss that party's other secondary and dependent contentions.

■ By supplemental brief which it was permitted to file a long time after its reply brief, MFC has attempted to present the proposition that its payments to Spartan were properly deductible, under 68 O.S. 1961, § 880 and paragraph (c) thereof, as federal income tax paid with respect to Oklahoma income. Although that theory is indicated in one or both of its returns involved herein, it expressly repudiated that theory in its protests against the assessments of additional tax and in its first brief filed in this court. And, as mentioned above, that contention is not included in its petition in error herein. That matter was not properly preserved for review in this appeal and we cannot consider it herein.

The order appealed from is sustained.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, IRWIN, HODGES, McINERNEY, and BARNES, JJ., concur.

JACKSON, J., dissents.