CENTERRE BANK OF CRANE, et
al., Petitioners,

v.

DIRECTOR OF REVENUE, State of
Missouri, et al., Respondents.

No. 69047.

Supreme Court of Missouri,
En Banc.

Jan. 20, 1988.

Juan D. Keller, Thomas C. Walsh, St. Louis, for petitioners.

William L. Webster, Atty. Gen., Melodie A. Powell, Asst. Atty. Gen., Jefferson City, for respondents.

Duane Benton, Jefferson City, for intervenor respondent.

Joseph J. Russell, Cape Girardeau, amicus curiae.

ROBERTSON, Judge.

This appeal presents three questions: (1) whether Missouri's bank tax, Section 148.-030, RSMo 1978, is a nondiscriminatory franchise tax which falls outside the prohibition of 31 U.S.C. sec. 3124(a) (1982) against taxing federal obligations or the interest thereon; (2) whether sales and use taxes paid by banks on purchases of tangible personal property are "taxes paid to the State of Missouri or any political subdivision thereof", Section 148.030.3, RSMo 1978, and thus may be taken as a credit against the Missouri bank tax; and (3) whether Section 148.040.3, RSMo 1978, permits a taxpayer bank which is a member of an affiliated group of banks for federal income tax purposes to deduct as ordinary and necessary business expenses payments to the parent company equal to the member bank's federal income tax liability as if it had filed a separate federal income tax return instead of filing a consolidated return. The Administrative Hearing Commission upheld the Director's decisions on all issues. Taxpayers appealed.

Because this appeal involves the construction of the revenue laws of the State of Missouri, we have jurisdiction. Mo. Const. art. V, sec. 3. The decision of the Administrative Hearing Commission is affirmed in part, reversed in part and remanded with directions.

I.

Centerre Bank of Crane ("Crane") is a Missouri banking corporation located in Crane, Missouri, and is a member of an affiliated group of banking corporations of which Centerre Bancorporation ("Centerre"), formerly First Union Bancorporation, is the common parent corporation.

As Crane's parent, Centerre filed consolidated federal income tax returns for the years at issue. Under a tax sharing agreement between members of the affiliated group, each member was to make (or receive) payments to (or from) the common parent in the amount of its separate federal tax liability (or refund). In 1977 and 1978, Crane had federal losses and received cash payments from Centerre under the agreement; Crane reported these payments as income for bank tax purposes. In 1979, Crane made a payment to Centerre based on Crane's federal income tax liability for that year. Crane timely filed its bank tax returns with the Director of Revenue for the taxable years in question here, 1977, 1978, 1979 and 1983. On its bank tax returns, Crane reported receiving interest on obligations of the United States Government. The Director rejected Crane's method of computing its federal income tax deduction, assessed a deficiency in Missouri bank tax for the taxable year 1979 and found refunds were due Crane for 1977 and 1978. Crane filed a claim for refund of the bank tax for taxable year 1983; the Director issued a final decision disallowing the claim for refund. Crane timely filed complaints with the Administrative Hearing Commission for the four taxable years in question.

First National Bank of Bethany ("Bethany") is a Missouri banking corporation located in Bethany, Missouri. Bethany timely filed its bank tax returns for taxable

years 1982, 1983 and 1984, deducting on each return amounts it had paid for Missouri state and local sales tax on purchases of tangible personal property and taxable services and Missouri use tax it paid for the consumption of tangible personal property in Missouri. The Director disallowed Bethany's claimed credits for sales and use taxes. Bethany also timely filed a complaint with the Administrative Hearing Commission.

The Administrative Hearing Commission consolidated the cases and upheld the Director's decisions in all respects. This appeal followed.

## II.

We first consider Crane's attack on the validity of the bank tax.

Section 148.030 applies to every Missouri bank, imposing a seven percent tax "for the privilege of exercising its corporate franchises within the state according to and measured by its net income for the preceding year." Section 148.040.1, RSMo 1978. "Net income" is "gross income" less the deductions allowed in Section 148.040.3, RSMo 1978. "Gross income" includes:

[I]nterest from obligations issued by the United States government or any political subdivision or any instrumentality thereof, or any state or political subdivision thereof, or issued by any foreign country or nation or political subdivision thereof....

Section 148.040.2, RSMo 1978. 31 U.S.C. sec. 3124(a) (1982) provides:

Stocks and obligations of the United States government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except—

*(1) a nondiscriminatory franchise tax or other nonproperty tax instead of a franchise tax, imposed on a corporation; and*

*(2) an estate or inheritance tax.*[1]

[Emphasis added]. Thus, sec. 3124(a) permits an indirect tax on federal obligations only to the extent that the tax is 1) a franchise tax and 2) does not discriminate against federal obligations.

### A.

■ Crane first argues that Missouri's bank tax is not a bona fide franchise tax but is instead an assessment against a banking corporation's property measured by yield.

Franchise taxes are excises, which include:

every form of taxation which is not a burden laid directly upon persons or property; in other words, excises include every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation.

*General American Life Ins. Co. v. Bates,* 363 Mo. 143, 249 S.W.2d 458, 462 (1952), *quoting State ex rel. Missouri Portland Cement Co. v. Smith,* 338 Mo. 409, 90 S.W.2d 405, 407 (1936).

By its express terms, Section 148.030 imposes a tax for the privilege of exercising a corporate franchise. Crane urges, however, that we must look behind the plain language of the statute to discover the true intent of the General Assembly in imposing the tax. Crane finds that intent in Section 148.110 which provides:

It is the purpose and intent of the general assembly to substitute the tax provided by sections 148.010 to 148.110 for the tax on bank shares which was

---

1. The former 31 U.S.C. sec. 3124 provided:

All stocks, bonds, treasury notes, and other obligations of the United States, shall be exempt from taxation by or under state or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or

indirectly, in the computation of the tax, except non-discriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes.

The 1982 amendment adopted technical changes which are not germane to the issue before us.

imposed by section 10959, RSMo 1939, and for all taxes on all tangible and intangible personal property of all banking institutions subject to the provisions of sections 148.010 to 148.110 ...,

and thus concludes that the bank tax is, in reality, a property tax. Crane supports this conclusion with *In re Armistead*, 245 S.W.2d 145, 152 (Mo.1952) ("The bank tax is an annual 'substitute' tax for the personal property tax.... We see no difference between such a tax and an annual property tax, on intangible personal property based upon 'yield.'") and *William A. Straub, Inc. v. City of St. Louis*, 506 S.W.2d 377, 380 (Mo.1974) ("We conclude that the General Assembly has expressed in Section 148.110 an intention that payment of the seven percent income tax by a bank is to be substituted for payment of the tangible property tax and is equivalent thereto.")

In *Arsenal Credit Union v. Giles*, 715 S.W.2d 918 (Mo. banc 1986), we discussed a virtually identical tax on credit unions imposed at a rate of seven percent of the credit union's net income for the preceding year, stating that "[t]he tax now under consideration is an excise by its terms...." *Id.* at 923. Crane contends that the *Giles* language is dicta, and argues that *Giles* is not controlling because "the Court did not engage in any analysis of the operation of the tax in referring to an excise tax but merely accepted the statutory language without further reflection."

■ Further reflection, assuming that more is needed, does not yield a different result. Nor do *Straub* and *Armistead* compel a different conclusion. We determine the nature of a tax not by the character of the tax it displaces but by the manner in which it is imposed.

Crane's argument that a tax on income cannot be a franchise tax is simply wrong. Income is merely the base against which this franchise tax is measured. "If a tax requires that earning income and exercis-

ing the privilege of doing business in a corporate form coincide before imposing tax liability, such a tax is properly characterized as a franchise tax." *State ex rel. Douglas v. Karnes*, 346 N.W.2d 231, 233 (Neb.1984).

The United States Supreme Court has "consistently upheld franchise taxes measured by a yardstick which includes tax-exempt *income* or property, even though a part of the economic impact of the tax may be said to bear indirectly upon such *income* or property." (Emphasis added.) *Werner Machine Co. Director, Division of Taxation*, 350 U.S. 492, 494, 76 S.Ct. 534, 535, 100 L.Ed. 634 (1956). It is the operation of the statute which determines the nature of the tax.

If we look to the operation of the present statute, it is plain that it can have no application independent of the corporation's enjoyment of the privilege of exercising its franchise. If appellant had ceased to do business before November 1, 1929, it would not have been subject to any tax under this statute, although it had received, during its preceding fiscal year, income which the statute makes the measure of the tax. Since it can be levied only when the corporation both seeks or exercises the privilege of doing business in one year and has been in receipt of net income during its preceding fiscal year, the tax, whatever descriptive terms are properly applicable to it, obviously is not exclusively on income apart from the franchise.

*Educational Film Corp. v. Ward*, 282 U.S. 379, 388, 51 S.Ct. 170, 171, 75 L.Ed. 400 (1931). The Supreme Court's analysis in *Ward* applies here.[2]

Crane next argues that the bank tax is not a franchise tax because it provides neither for multi-state allocation and apportionment nor for forfeiture of the franchise for nonpayment. The former argument

2. Crane cites *American Bank and Trust Co. v. Dallas County*, 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983), as authority for its position. There Texas imposed a *property* tax on bank shares. The value of the shares included the value of obligations of the United States held by a bank. The Supreme Court disallowed the tax because it was a property tax which neither 31 U.S.C. sec. 3124(a) nor its predecessor, 31 U.S.C. sec. 742 permitted. The tax imposed by Section 148.030 is not a property tax. The case is clearly inapposite.

fails to consider that multi-state banking was illegal in Missouri until 1984. *See* Section 148.095, RSMo 1986. Further, Crane makes no claim that it received income from banking operations outside Missouri for the tax years in question. We fail to see either the potency or the relevancy of Crane's argument.

■ The latter argument is also unpersuasive. A forfeiture sanction is not the *sine qua non* of a franchise tax. It is the manner of operation which determines the nature of a tax, not the sanctions imposed for failure to pay it.

We conclude that the tax imposed in Section 148.030 is a franchise tax within the meaning of 31 U.S.C. sec. 3124(a).[3]

### B.

In *Memphis Bank and Trust Co. v. Garner,* 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed. 2d 562 (1983), the Supreme Court held that a Tennessee bank tax statute which expressly excluded from the income base interest earned on obligations of Tennessee and its political subdivisions discriminated against the United States. Admitting that Section 148.030 contains no such express language favoring Missouri obligations, Crane urges nevertheless that the bank tax operates in a discriminatory manner, citing a number of statutory provisions exempting bonds issued under the relevant statutes from all forms of taxation by the state. *See, e.g.,* Section 173.440, RSMo 1986, relating to the Higher Education Loan Authority; Section 260.075, RSMo, relating to the Environmental Improvement Authority; Section 349.090, RSMo 1986, relating to Industrial Development Corporations and Section 360.135, RSMo 1986, relating to the Health and Educational Facilities Authority.

Section 148.040.2 expressly *includes* obligations of Missouri and her political subdivisions in the definition of "gross income" for purposes of determining the bank tax. Crane's argument thus posits an irreconcil-

able conflict between Section 148.040.2 and the bond exemption statutes.

We do not agree that such a conflict exists. The bank tax imposed in Section 148.030 is not, as Crane insists, a direct tax on income. Instead the bank tax is a tax on the privilege of doing business as a bank in Missouri; it is a franchise tax measured by income.

The bond statutes exempt state and local obligations from *direct* taxation. The fact that the economic burden of the bank tax falls *indirectly* on such obligations is not contrary to the bond exemption statutes.

We hold that the tax imposed by Section 148.030 is a nondiscriminatory franchise tax within the meaning of 31 U.S.C. sec. 3124(a). Crane's point is denied. The decision of the Administrative Hearing Commission in this regard is affirmed.

### III.

We turn now to the question whether sales and use taxes paid by banks on purchases of tangible personal property may be taken as credits against the bank tax.

Section 148.030.3, RSMo 1978, provides in pertinent part:

> Each taxpayer shall be entitled to credits against the tax imposed by this law for *all taxes paid to the state of Missouri or any political subdivision thereof* during the relevant income period....

[Emphasis added.]

### A.

■ Bethany argues that sales taxes are included within the credits available under Section 148.030.3. The Director urges that because the seller bears the primary burden for payment of the tax, Section 144.-021, RSMo 1986, the tax is not paid to the State by Bethany and cannot, therefore, be applied as a credit against the bank tax.

This issue is made more difficult by the legislature's less-than-clear directives as to who "pays" sales tax. As the Director argues, "the primary tax burden is placed

---

**3.** The conclusion reached is consistent with *Department of Revenue v. First Union National Bank of Florida,* 513 So.2d 114 (Fla.1987) and *Garfield Trust Co. v. Director, Division of Taxation,* 508 A.2d 1104 (N.J.1986).

upon the seller." Section 144.021. However, Section 144.060, RSMo 1986, makes it "the duty of every person making any purchase ... upon which a tax is imposed ... to pay ... the amount of such tax to the person making such sale...." A purchaser's willful failure to pay the sales tax is a misdemeanor. *Id.* Section 144.080.4, RSMo 1986, requires the seller to collect the tax from the purchaser.

In *Fabick v. Schaffner*, 492 S.W.2d 737, 743 (Mo.1973), this Court held that the sales tax is a gross receipts tax imposed upon the seller. *Farm and Home Savings Assn. v. Spradling*, 538 S.W.2d 313, 316 (Mo.1976), states:

> The fact that section 144.060 ... imposes the duty upon the purchaser to pay the amount of the tax to the seller does not alter the legal nature of the tax. In *Ferrara v. Director, Division of Taxation*, 127 N.J.Super. 240, 317 A.2d 80, 83 (1974), it was said, "the mere fact that it may be universally recognized that the ultimate economic burden of a tax is passed on to the consumer does not determine the *legal incidence* of the tax. Traditionally, the economic burden of all taxes, like costs in general, is passed down to the consumer level."

[Emphasis in original.]

Recently, in *Heimos Greenhouse v. Director of Revenue*, 724 S.W.2d 505, 507 (Mo. banc 1987), we acknowledged that while the purchaser bears the economic burden of the sales tax, "the taxpayer is the seller, not the purchaser." *State ex rel. Thompson–Stearns–Roger v. Schaffner*, 489 S.W.2d 207, 215 (Mo.1973), tells us "[t]here is no question that the General Assembly in enacting the sales tax law intended to place the burden of the tax upon the person paying the purchase price."

The critical phrase in Section 148.030.3 for our purposes here is "all taxes paid to the state of Missouri". The parties' briefs are creative in their effort to assist us, leading us through a labyrinth of legislative history while each offers surgical dissections to distinguish the cases the other tenders for support. In the end, however, we turn to familiar canons of construction for guidance.

■ Our polestar is the intent of the legislature. Construction must always seek to find and further that intent. *Sermchief v. Gonzales*, 660 S.W.2d 683 (Mo. banc 1983). Taxing statutes are strictly construed against the taxing authority and in favor of the taxpayer. *Brown Group, Inc. v. Administrative Hearing Commission*, 649 S.W.2d 874, 881 (Mo. banc 1983). Deductions and credits against taxes otherwise due are matters of legislative grace and allowed only to the extent authorized by statute. *Id.* at 877.

■ Section 148.030.3 permits a credit for "all taxes paid to the state of Missouri." Even construing this language strictly against the state, we conclude that the credit established in Section 148.030.3 is available only to the person or entity bearing the legal incidence of the tax. Thus, sales taxes paid to sellers by Bethany are not "taxes paid to the state of Missouri."

■ Our cases have consistently maintained that the sales tax is a gross receipts tax *paid by the seller* to the state of Missouri. The fact that the purchaser bears the economic burden of the sales tax does not alter the statutory scheme which imposes the sales tax on sellers "for the privilege of engaging in the business, in this state, of selling tangible personal property...." Section 144.021. A purchaser's payment of the tax to the seller does not render that purchaser's payments "taxes paid to the state of Missouri" within the meaning of Section 148.030.3.

Crane argues that the 1986 amendment to Section 148.030.3, 1986 Laws of Mo., 601, 602–3 (H.B. 1195, 83rd General Assembly, Second Regular Session), which expressly includes "state and local sales and use taxes paid to sellers, vendors, or the State of Missouri ..." among the taxes for which a credit is allowed, supports its position on the sales tax issue. Crane thus urges that the purpose of the statutory amendment is to clarify the breadth of the sales tax credit.

The Director argues that the amendment means nothing unless the prior statute excluded sales and use taxes from the credit. *See Laclede Gas Co. v. Labor and Industrial Relations Commission,* 657 S.W.2d 644, 650 (Mo.App.1983) ("A legislature is also presumed to intend the passage of an effective law and to make some changes in the existing law.")

As we have said, the seller is the taxpayer for purposes of our sales tax law. The legislature is presumed to be aware of the interpretation of existing statutes placed on them by state appellate courts. *Kilbane v. Director, Dep't of Revenue,* 544 S.W.2d 9, 11 (Mo. banc 1976). Thus, in our view, the 1986 amendment to Section 148.-030.3 expanded the credit available under the bank tax law, thus effecting a change in the law. The credit claimed by Bethany under Section 148.030.3, RSMo 1978, for sales taxes it paid to a seller is not available.

### B.

As for use tax, Section 144.610, RSMo 1986, imposes such tax "for the privilege of storing, using or consuming within this state any article of tangible personal property...." Unlike the sales tax, the legal incidence and economic burden of the use tax falls on the purchaser, not the vendor. Section 144.610.2, RSMo 1986. *See Southwestern Bell Telephone Co. v. Morris,* 345 S.W.2d 62, 66 (Mo. banc 1961). (" 'Obvious purpose and effect of use tax is *to complement retail sales tax* by imposing, in respect of purchases made outside state for use in state, compensating use tax ... thereby ... promoting equality between ... purchases of goods in state and purchasers of goods outside state for use within state.' [citation omitted].") (Emphasis in original.) We conclude that use taxes are "taxes paid to the state of Missouri" and are therefore creditable against the bank tax pursuant to Section 148.030.3.

The decision of the Administrative Hearing Commission is affirmed on the issue of the creditability of the sales tax and reversed as to the creditability of the use tax.

### IV.

We come finally to determine whether Section 148.040.3, RSMo 1978, permits Crane to deduct payments to its parent corporation equal to its federal income tax liability as if it had filed a separate federal income tax return. Crane claims that such payments are ordinary and necessary business expenses within the meaning of Section 148.040.3. Crane does not claim its payments are deductible as taxes paid.

Section 148.040.3 provides in pertinent part: "In computing net income there shall be allowed as deductions all ordinary and necessary expenses paid or incurred by the taxpayer during the income period in carrying on its trade or business." A deduction is thus allowed to the extent it represents an 1) ordinary 2) necessary 3) expense 4) incurred during the income period 5) in pursuit of a trade or business. Crane obviously contends that this five-part test is fully met for the payments at issue here. The Director contends that the payments are neither ordinary nor necessary; the Director argues that the payments are in fact, dividends. The outcome turns on the meaning of the phase "ordinary and necessary expenses."

The parties have not provided, and independent research has not yielded, a Missouri case in which the phrase "ordinary and necessary expenses" has suffered judicial definition in the context of the bank tax. We believe, however, that the meaning of the phrase for our purposes is consistent with the definitions provided in an income tax context.

The seminal case is *Welch v. Commissioner,* 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933). Welch was an officer in a bankrupt grain business. In order to reestablish his reputation with customers, he volunteered to pay the debts of the bankrupt business on his federal income tax return, deducting these as ordinary and necessary business expenses. For the Supreme Court, Justice Cardozo wrote that the payments "were necessary for the development of the petitioner's business, at least in the sense that they were *appropriate and helpful.* [citations omitted]. He

certainly thought they were, and we should be slow to override his judgment." [Emphasis added.] *Id.* at 113, 54 S.Ct. at 9.

The advantages to a small bank in joining an affiliated group range across a broad spectrum. From an ability to offer a broader range of banking products to multiple banking outlets for customers throughout the state, such advantages are readily perceived. Contracts which establish an affiliated group and determine the nature of the banks' intercourse are both helpful and appropriate. We believe the payments made in pursuit of that contractual relationship are necessary within the meaning of Section 148.040.3.

Are these payments ordinary? *Welch* tells us: "One struggles in vain for any verbal formula that will supply a ready touchstone. The standard set up by the statute is not a rule of law; it is rather a way of life. Life in all its fullness must supply the answer to the riddle." *Welch,* 290 U.S. at 115, 54 S.Ct. at 9. We are told to look to "norms of conduct that help stabilize our judgment, and make it certain and objective." *Id.* at 114, 54 S.Ct. at 9. The *Welch* test requires that we determine whether these payments are ordinary "according to the ways of conduct and forms of speech prevailing in the business world...." *Id.* at 115, 54 S.Ct. at 9.[4]

This Court has previously stated the value of corporations affiliating. "The choice to become part of an affiliated group is legitimate, of course, and there are instances where there is a tax advantage in filing a consolidated federal income tax return to lessen the group's tax liability and permit the funneling of the savings directly back into the group of subsidiaries for immediate business use." *Mid–America Television v. State Tax Commission,* 652 S.W.2d 674, 681 (Mo. banc 1983). As we have said here, other advantages derived by affiliated banks in cooperating are easily understood.

Crane suggests a far less metaphysical test than that put forth in *Welch.* In *Commissioner v. Tellier,* 383 U.S. 687, 689–90, 86 S.Ct. 1118, 1120, 16 L.Ed.2d 185 (1966), the Supreme Court said: "The principal function of the term 'ordinary' ... is to clarify the distinction, often difficult, between those expenses that are currently deductible and those that are in the nature of capital expenditures, which, if deductible at all, must be amortized over the useful life of the asset." Crane's payments to its parent are clearly not in the nature of capital expenditures. Under both the *Tellier* and *Welch* tests, we believe the payments are ordinary within the conduct of the banking world.

The Director invites us to consider *Minnehoma Financial Company v. Oklahoma Tax Commission,* 499 P.2d 393 (Okla.1972). There, the Oklahoma Supreme Court held that payments made by a subsidiary to a parent corporation which filed a consolidated return, in an amount equal to the subsidiary's federal income tax liability as if it had filed a separate federal income tax return were not ordinary and necessary expenses for purposes of the Oklahoma income tax law. The court's decision appears to turn on *its* assessment of the utility of the payments for purposes of the subsidiary's business. "We cannot see that [the subsidiary's] payments to [the parent] under their agreement were at all helpful in carrying on of [the subsidiary's] business.... In the circumstances, if the payments in question were not, in effect, dividends paid to [the subsidiary's] only stockholder, they were purely gratuitous." *Id.* at 398. *See also Alliegro v. Pan American Bank of Miami,* 136 So.2d 656 (Fla. App.1962) and *Beneficial Corp. v. Commissioner,* 18 T.C. 396 (1952), which reach a similar result.

We are not persuaded by the reasoning in *Minnehoma.* We embrace a reluctance, apparently not shared by the *Minnehoma*

4. *Welch* admits that the meaning of "ordinary" requires a case-by-case analysis. "Many cases in the federal courts deal with phases of the problem presented in the case at bar. To attempt to harmonize them would be a futile task. They involve the appreciation of particular situations, at times with border-line conclusions." *Id.* 290 U.S. at 116, 54 S.Ct. at 10. We are, of course, more comfortable with bright line rules than decision by adhocracy. Unfortunately, tax statutes in this area ultimately leave us no option; each case becomes a "riddle" unto itself.

court, to substitute our judgment as to the efficacy of a particular expenditure for the judgments of those charged with "bottom line" responsibility for the bank. We, therefore, do not find the cases cited by the Director persuasive.

Because we believe the payments in question are ordinary and necessary expenses within the meaning of Section 148.-040.3, we need not address the Director's conclusory contention that these payments are dividends.

The decision of the Administrative Hearing Commission is reversed on the issue of the deductibility of Crane's payments to Centerre in an amount equal to Crane's federal income tax liability had it filed a separate federal income tax return.

## V.

For the reasons stated, the decision of the Administrative Hearing Commission is affirmed in part and reversed in part. The cause is remanded to the Administrative Hearing Commission for entry of an order consistent with this opinion.

BLACKMAR, RENDLEN and HIGGINS, JJ., and REINHARD, Special Judge, concur.

DONNELLY and WELLIVER, JJ., concur in result.

BILLINGS, C.J., not sitting.