**458**

Raymond B. HERSCHEND,
et al., Appellants,

v.

DIRECTOR OF REVENUE, Respondent.

No. 77325.

Supreme Court of Missouri,
En Banc.

April 25, 1995.

Bruce Waugh, David Zimmerman, Carol Smith, Kansas City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, Gretchen Garrison, Asst. Atty. Gen., Jefferson City, for respondent.

LIMBAUGH, Judge.

■ Raymond and Kelly Herschend (the Herschends) seek a ruling that Tenn.Code Ann. § 67–4–806 (1994)[1], a Tennessee corporate tax statute, is an "income tax" within the meaning of § 143.081.1, RSMo 1986, entitling them to a credit against their Missouri income tax liability. The Director of Revenue (Director), and, in turn, the Administrative Hearing Commission (AHC) determined that the Tennessee tax was not an "income tax," and, therefore, denied the credit. Because resolution of the appeal requires construction of § 143.081.1, a revenue law, this Court has exclusive jurisdiction. Mo. Const. art. V, § 3. Reversed and remanded.

Throughout the 1988 tax year, the Herschends were Missouri residents and shareholders of Silver Dollar City, Inc. (SDC), a Missouri S–Corporation. SDC operates theme and water parks in Missouri, Tennessee, Oklahoma, Georgia and Texas. As a result of its operations during the 1988 tax year, SDC paid both excise tax and franchise tax in Tennessee, §§ 67–4–806(a), 4–903(a); and corporate income tax in Georgia, Ga. Code Ann. § 48–7–21(a) (1993), and Oklahoma, Okla.Stat.Ann. tit. 68, § 2355(B) (1990).

The Herschends filed an original and two amended Missouri income tax returns for the 1988 tax year. Because of SDC's "subchap-

---

1. All Tennessee citations are to Tenn.Code Ann.   (1994).

ter S" tax status, corporate income tax liability is passed through to the shareholders. § 143.471, RSMo 1994. On their amended returns, the Herschends claimed a credit for the distributive share of taxes paid to Tennessee,[2] Georgia and Oklahoma on the premise that each of these taxes was an "income tax," for which a credit is allowed under § 143.081.1.[3] As a result, they sought a refund of $8,665.

The Director treated the Tennessee excise tax (Tennessee tax) as a franchise tax rather than an "income tax," and disallowed the amount of the credit attributable to that tax. The refund claim was allowed only insofar as it was attributable to the Georgia and Oklahoma taxes. This litigation ensued.

The sole issue presented is whether the Tennessee tax is an "income tax" under § 143.081.1. That section provides, in pertinent part:

[a] resident individual ... shall be allowed a credit against the tax otherwise due under section 143.005 to 143.998 for the amount of any income tax imposed on him for the taxable year by another state of the United States....

It is undisputed that the term "income tax" as used in § 143.081.1 includes the distributive share of corporate income tax paid to another state by or on behalf of subchapter S corporation stockholders. Therefore, as agreed by the parties, if the Tennessee tax is a corporate income tax under Missouri law, then the Herschends are entitled to the credit and a refund of $3,825. If, however, the Tennessee tax is not a corporate income tax, then the Herschends cannot claim a credit, and they owe $894.

The Tennessee tax was enacted as part of the "Excise Tax Law" and provides, in part, as follows:

**2.** The Herschends only claimed a credit for the distributive share of taxes paid to Tennessee pursuant to the Tennessee *excise* tax. The Herschends claimed no credit, nor do they now claim a credit for taxes paid pursuant to § 67-4-903(a), the Tennessee *franchise* tax.

**3.** Before a Missouri partner (or subchapter S shareholder) claims a credit for another state's income tax, the taxpayer must "add back" the other state's tax to federal adjusted gross income,

[a]ll corporations ... organized for profit under the laws of this state or any other state or country and doing business in Tennessee ... shall, without exception other than as provided herein, pay to the commissioner of revenue annually, an excise tax, in addition to all other taxes, equal to six percent (6%) of the net earnings for the next preceding fiscal year for business done in this state.

§ 67-4-806(a).

From the outset, the Director concedes that the label "excise tax" accorded by the Tennessee legislature is not controlling. Rather, both parties contend that § 143.091 requires this Court to define the term "income tax" in accordance with federal law. By its express terms, however, that statute does not apply if a different meaning is clearly required by the provisions of Chapter 143, that is, when Chapter 143 provides a ready definition.

In this case, there is no need to refer to federal law because the definition of corporate income tax can clearly be ascertained by reference to Missouri's corporate income tax statute, § 143.071.1, which states:

[f]or all tax years beginning on or after September 1, 1993, a tax is hereby imposed upon the Missouri taxable income of a corporation in an amount equal to six and one-fourth percent of Missouri taxable income.

Missouri taxable income is defined under § 143.431.1, RSMo 1993, as "federal taxable income" derived from sources within the state.

In comparison, the Tennessee tax is based on net earnings derived from sources within the state, and "net earnings," like the term "Missouri taxable income," is defined as "federal taxable income." § 67-4-805(a)(1). The two taxes, both based solely on federal tax-

which is the basis for Missouri adjusted gross income. If the taxpayer itemizes deductions, the taxpayer must also "take out" the other state's tax from federal itemized deductions, which is the basis for Missouri itemized deductions. *See* §§ 143.121.1, 143.121.5 and 143.141(2), RSMo 1986. The Herschends show both the "add back" and the "take out" on their Missouri return.

able income, are essentially the same, the only difference being that Tennessee imposes the tax at the rate of 6% while Missouri imposes the tax at the rate of 6¼%. Therefore, we conclude that the Tennessee tax, under Missouri law, is a corporate income tax entitling the Herschends a credit under § 143.081.1.

The Director, citing *King v. Procter & Gamble,* 671 S.W.2d 784, 785 (Mo. banc 1984), and *Centerre Bank of Crane v. Director of Revenue,* 744 S.W.2d 754, 757 (Mo. banc 1988), contends that the characterization of the tax depends on the object on which the tax is imposed, not the measure of its calculation. Specifically, the Director suggests that the object of the Tennessee tax is the privilege of doing business in the state. Although that specific issue is not raised in *King,* this Court, in *Centerre,* held that a bank tax imposed on the privilege of doing business within the state was a franchise tax, even though the tax was measured by net income. Unlike the tax in *Centerre,* however, the sole object on which the Tennessee tax is imposed is income. Moreover, the statute makes no reference to the privilege of doing business in the state. Therefore, even under the "object test" the Tennessee tax must be an "income tax."

In arriving at this conclusion, we also note that Tennessee has a separate corporate franchise tax imposed on the privilege of doing business in the state, §§ 67–4–901 to 921. It is difficult to fathom why there would be *two* corporate franchise taxes, both of which are imposed on corporations for the privilege of doing business in the state.

The dissent suggests that § 67–4–806(b) does indeed refer to the privilege of doing business in the state. That section provides that every corporation doing business in the state shall pay the Tennessee tax as "recompense for the protection of its local activities and as compensation for the benefits it receives from doing business in Tennessee ...." Compensation for benefits, however, is not the same as "the privilege of doing business." All taxes are compensation for

benefits provided by governments, benefits such as roads, schools, police protection, fire protection, etc. Only franchise taxes, however, are imposed on the privilege of doing business in the state.

■ In that regard, the critical distinction between an income tax and franchise tax is that the former is imposed to compensate the state for benefits already received, while the latter is imposed and payable in advance for the privilege of exercising the right to do business in the state in the future. *Educational Films Corp. v. Ward,* 282 U.S. 379, 388, 51 S.Ct. 170, 171–72, 75 L.Ed. 400 (1931). Consequently, if a corporation ceases to do business during a particular year in which it has generated income, it would still be subject to income tax, *id.,* but not franchise tax. The Tennessee tax, unlike a franchise tax, is compensatory, and it is due even if the corporate entity ceases to exist and discontinues doing business in the state. *See Tennessee Growers, Inc. v. King,* 682 S.W.2d 203, 204–06 (Tenn.1984) (corporate taxpayer that liquidated held responsible for the Tennessee tax).

In conclusion, we hold that the Tennessee tax is an "income tax" for purposes of § 143.081.1.[4] Accordingly, the Herschends are entitled to a refund in the amount of $3,825. The decision of the AHC is reversed, and the case is remanded with instructions to order the refund.

COVINGTON, C.J., and HOLSTEIN, BENTON, THOMAS and PRICE, JJ., concur.

ROBERTSON, J., dissents in separate opinion filed.

ROBERTSON, Judge, dissenting.

The Tennessee Constitution prohibits the Tennessee legislature from imposing an income tax. Tenn. Const. art. II, § 28. Aware of that constitutional prohibition, the Tennessee legislature enacted a law that imposed an annual six percent excise tax on the net

---

4. The commentators reviewing the Tennessee tax are all in accord with this holding. Cavitch, *Business Organizations,* § 80.03, n. 2; Heller-stein, *State Taxation,* par. 1.6; CCH par. 10–830; Chart of State Taxes, P–H *All States Guide,* par. 210; and P–H par. 1320.

earnings of corporations. Tenn.Code Ann. § 67–4–806(a) (1988).

The taxpayers in this case paid their tax to Tennessee without so much as an official whimper. They did not claim—by way of lawsuit or protest—that the tax Tennessee demanded violated the Tennessee constitutional provision against income taxes. Hoping for a home court advantage, however, they claim in this Court that they paid Tennessee an income tax and want the credit Section 143.081.1, RSMo 1994, grants for "any income tax imposed on him for the taxable year by another state."

By its own terms, Section 143.081.1 conditions its credit on the payment of income tax imposed by another state. Thus, it seems blindingly obvious that the nature of the tax Tennessee imposes is at least worthy of some discussion in resolving the issues presented in this case.

Repeatedly, the Tennessee Supreme Court has stated that the Section 67–4–806(a) excise tax is *not* an income tax. "This excise tax is upon the privilege of doing business in corporate form in this State." *Roane Hosiery, Inc. v. King*, 214 Tenn. 441, 381 S.W.2d 265, 267 (1964) (*citing Texas Gas Transmission Corp. v. Atkins*, 197 Tenn. 123, 270 S.W.2d 384, 387–88 (1954)). "The Tennessee Excise Tax Law is neither a property tax nor an income tax, but is a tax based upon the privilege of doing business in corporate form in Tennessee." *Woods Lumber Co. v. MacFarland*, 209 Tenn. 667, 355 S.W.2d 448, 451 (1962).

This conclusion by Tennessee's highest judicial tribunal—a tribunal of elected judges subject to the voters' wrath—is not a creation of some wandering judicial flight of fancy. It is quite consistent with the plain, unmanipulated language of Section 67–4–806(b) that describes the tax "as compensation for the benefits it [the taxable entity] receives from doing business in Tennessee."

And yet, without so much as citing these authoritative judicial constructions of Tennessee law, the majority looks to Missouri law as the newly-discovered Rosetta Stone for interpreting the laws of other states. That *renvoi* is remarkable enough in itself; it

is all the more remarkable when the majority decides to ignore Missouri statutes and judicial decisions that point another way.

The taxpayers here want to enjoy a tax credit; a matter of legislative grace "allowed only to the extent authorized by statute." *Centerre Bank of Crane v. Director of Revenue*, 744 S.W.2d 754, 759 (Mo. banc 1988). Therefore, this case hinges on a strict construction, against the taxpayer, of the term "income tax" in Section 143.081.1. Section 143.091 reads:

> Any term used in sections 143.011 to 143.996 shall have the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is *clearly required by the provisions of sections 143.011 to 143.996.*

[Emphasis added.] The majority apparently reads the italicized language to mean that if it can rationalize, by reference to a purportedly analogous Missouri statute, a meaning different than that articulated under federal law, it may ignore the federal definition. However, "clearly required" is not a license to roam throughout the statutes for a more pleasing alternative; it means the Court must look to federal law unless the statutes expressly define the relevant term differently.

The Missouri statutes flatly do not define "income tax." The General Assembly had the choice of fashioning a definition, or directing the Court to an extant body of authority to clarify its meaning. In Section 143.091, the legislature chose the latter course.

In *King v. Procter & Gamble Distributing Co.*, 671 S.W.2d 784, 785 (Mo. banc 1984), this Court followed Section 143.091 and relied on federal law to define "income tax." The Court said:

> Section 143.091 provides that any term used in §§ 143.011 to 143.996 shall have the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes. The United States Supreme Court has recognized that the term "income tax" is a term of art. It refers to taxes on income and does not include taxes on subjects

other than income, although measured by income.

The Court referred to federal precedent again in *Centerre Bank of Crane*, 744 S.W.2d at 757, to hold that the object of a tax statute, whether income or the privilege of doing business in the state in a corporate form, determines its nature. It is to the precedents cited in *King* and *Centerre Bank of Crane*, and not the manner in which Missouri opts to tax corporations, that the Court should turn in resolving this case.

Those precedents recognize a meaningful distinction between a tax that has income as its object, and a franchise tax that uses income as its measure. In *Educational Films Corporation v. Ward*, 282 U.S. 379, 386, 51 S.Ct. 170, 170–71, 75 L.Ed. 400 (1931), the United States Supreme Court considered a challenge to the validity of a New York statute that taxed the privilege of doing business in the corporate form in New York, but measured the tax according to income, including income earned from tax-exempt federal bonds. The statute at issue differed from the Tennessee statute in this case primarily in that it called itself a "franchise," as opposed to an "excise," tax. The Court held that the New York law did not constitute a forbidden tax on income from the tax exempt bonds in that the taxpayer did not incur the tax *because* it earned the income, but *because* it sought to do business in the state in a corporate form. *Id.* at 391, 51 S.Ct. at 172–73.

The majority of this Court, in asserting that "the sole object on which the Tennessee tax is imposed is income" apparently views this as a distinction without a difference. The United States Supreme Court disagrees:

This distinction, so often and consistently reaffirmed, is but a recognition that the franchise, the privilege of doing business in corporate form, which is a legitimate subject of taxation, does not cease to be such because it is exercised in the acquisition and enjoyment of nontaxables.... The owner may enjoy his exempt property free of tax, but if he asks and receives from the state the benefit of a taxable privilege as the implement of that enjoyment, he must bear the burden of the tax which the state exacts as its price.

*Pacific Co. v. Johnson*, 285 U.S. 480, 490, 52 S.Ct. 424, 426, 76 L.Ed. 893 (1932).

It is true that this case does not involve tax exempt federal obligations. However, the distinction articulated in the cited cases evolved to separate taxes whose object is income, specifically tax-exempt income, from those with objects other than income. An "income tax" on the income from tax exempt federal obligations would violate the prohibition on state taxation of those obligations; a tax that considers such income but does not violate the prohibition is not, therefore, an "income tax."

There can be no doubt that the distinction developed by federal precedent applies to the Tennessee excise tax. In *Memphis Bank & Trust Co. v. Garner*, 459 U.S. 392, 398–399, 103 S.Ct. 692, 696, 74 L.Ed.2d 562 (1983), the United States Supreme Court found that a Tennessee bank excise tax, similar to the corporation excise tax, discriminated by including in "net earnings" proceeds from federal nontaxable obligations, but excluding proceeds from nontaxable obligations of the state and its subdivisions. On its way to that decision the Court opined that if the tax applied equally to state and federal bonds, it would not amount to a prohibited state taxation of exempt income. "Where, as here, the economic but not the legal incidence of the tax falls on the Federal Government, such a tax generally does not violate the constitutional immunity if it does not discriminate." *Id.* at 397, 103 S.Ct. at 696. The bank excise tax would have passed muster, as not directly taxing income, but for its discriminatory impact.

After the *Garner* decision, the Tennessee legislature, in 1983, amended the corporations excise tax, Section 67–4–801 *et seq.*, to conform with *Garner* by encompassing the proceeds from both state and federal tax-exempt obligations in the "net earnings" basis for the tax. A Tennessee corporate taxpayer challenged the amended excise tax on the grounds that (a) it impaired Tennessee's contract obligations (not to tax the proceeds of its own nontaxable bonds) and (b) it violated 31 U.S.C. § 3124(a), which essentially co-

difies the immunity of federal obligations from state taxation. *First American National Bank v. Olsen*, 751 S.W.2d 417, 419 (Tenn.1987). The Tennessee Supreme Court—again—found that the incidence of the excise tax was not the income from the obligations, but the privilege of doing business in Tennessee in the corporate form.

> The Legislature could not retroactively revoke the tax exemption for [state] obligations or otherwise impose a tax on such obligations or the income earned on them, but that is not what the amended excise tax does. The tax is imposed on the privilege of incorporation and is measured by the corporation's net income. . . .

*Id.* at 420. The Tennessee Supreme Court found the tax not violative of the federal immunity statute for the same reason. *Id.* at 421. The taxpayer plaintiff sought review of Tennessee's reading of 31 U.S.C. § 3124(a) in the United States Supreme Court, but the same Court that reviewed *Garner* found no substantial federal question in *First American* and dismissed the appeal. *First American National Bank v. Taylor*, 485 U.S. 1001, 108 S.Ct. 1460, 99 L.Ed.2d 691 (1988).

This all boils down to a straightforward logical progression: (1) the credit the taxpayers in this case seek to claim applies only to "income tax imposed ... by another state;" (2) nowhere do Sections 143.011 to 143.996 define that phrase except by referring to federal interpretations; (3) this Court has on several occasions followed that reference and relied on federal tests for "income tax;" (4) the United States Supreme Court not only instructs that a tax on the privilege of doing business in the corporate form is not an income tax but has in fact tacitly approved of a related Tennessee bank excise tax; (5) the highest court of Tennessee applied the same federal tests to find that Section 67–4–801, *et seq.*, the excise tax, has as its incidence not income but the privilege of conducting business in the corporate form in Tennessee, and thus constitutes a franchise tax under a federal statute; and (6) the United States Supreme Court refused to gainsay that holding.

The majority has difficulties following this progression in two fundamental places: First, for the reasons previously discussed, the majority ignores the plain meaning of Section 143.091.

Second, and more troubling, is the majority's judicial xenophobia. Although everyone agrees that Tennessee's label of "excise tax" cannot determine its characterization under a Missouri statute, Tennessee decides whether to impose its taxes on income or on something else, not Missouri. If Tennessee imposes what federal law describes as an income tax, but calls it something else, this Court would rightly ignore that label. But in divining the nature of the tax, this Court cannot ignore the language used by the Tennessee legislature, nor the Tennessee Supreme Court's interpretations of the meaning of the Tennessee statute. As a matter of affording the highest court of a sister state the same respect on which this Court would indignantly insist, we should accept Tennessee's unchallenged position that Section 67–4–801, *et seq.*, imposes a tax on the privilege of doing business in the corporate form in Tennessee.

The majority makes much of the fact that the excise statute neither contains the words "for the privilege of conducting business," nor includes the sanction of franchise revocation for nonpayment of the tax. But, as previously quoted, there is language in the Tennessee statute to support the Tennessee Supreme Court's interpretation. And that language supports the conclusion this Court reached in *Centerre Bank of Crane* that " '[i]f a tax requires that earning income and exercising the privilege of doing business in corporate form coincide before imposing tax liability, such a tax is properly characterized as a franchise tax.' " 744 S.W.2d at 757 (*quoting State ex rel. Douglas v. Karnes*, 216 Neb. 750, 346 N.W.2d 231, 233 (1984)). Moreover, the fact that a franchise tax statute contains no forfeiture of the franchise for failure to pay it does not defeat its characterization as a franchise tax. *Id.*

The fact that Tennessee appears to have two franchise taxes—one called a franchise tax and the other called an excise tax—is a matter for the people of Tennessee to consider when addressing their elected representatives. We are not free to ignore the decisions of the Tennessee Supreme Court that

tell us unequivocally that the Section 67–4–806(a) tax is not an income tax. This is particularly so where the taxpayers pay the tax without protest, thereby waiving their right to complain that the tax they paid is an income tax that violated Tennessee law. *Cf. State v. Algernon Blair, Inc.*, 285 Ala. 44, 228 So.2d 803, 805 (1969).

I respectfully dissent.